**UNITED STATES, Appellee,**

v.

**Naomi J. HAYE, Second Lieutenant,
U.S. Air Force, Appellant.**

**No. 60518.
ACM 25873.**

U.S. Court of Military Appeals.

Sept. 28, 1989.

For Appellant: *Morgan E. Welch, Esq.* (argued); *Colonel Richard F. O'Hair* and *Captain Darla G. Orndorff* (on brief); *Lieutenant Colonel Patrick C. Sweeney.*

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport,* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief); *Major Kathryn I. Taylor* and *Major Terry M. Petrie.*

*Opinion of the Court*

COX, Judge:

Notwithstanding her pleas of not guilty, a general court-martial with members convicted appellant, Second Lieutenant Haye, of violating Article 134, Uniform Code of Military Justice, 10 USC § 934. Specifically, she was convicted of two specifications of adultery and one specification of fraternization with an enlisted person. The judge set aside one specification of adultery as being multiplicious with the fraternization specification. She was sentenced to dismissal and total forfeitures. The convening authority modified the sentence to forfeiture of $848 pay per month for 12 months and dismissal from the Air Force.

The Court of Military Review set aside the conviction for adultery with a captain, but upheld the conviction of fraternization and affirmed the sentence. 25 MJ 849 (1988). We granted review of the following issue:

> WHETHER IT WAS ERROR TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED TO AFFIRM A FRATERNIZATION CONVICTION BASED SOLELY ON SEXUAL ACTIVITY ALLEGED BY AN ACCOMPLICE AND DENIED BY THE ACCUSED, WHEN A SECOND CONVICTION FOR ADULTERY WITH A DIFFERENT MILITARY MEMBER TRIED AT THE SAME TRIAL WAS REVERSED AS A RESULT OF ERRONEOUS ADMISSION OF DERIVATIVE EVIDENCE FROM A COERCED CONFESSION.

Appellant was a Deputy Crew Commander on a Standardization Evaluation (stan/eval) crew, 308th Strategic Missile Wing, located at Little Rock Air Force Base, Arkansas. On March 27, 1986, appellant's superior, Captain Wright, had three telephone conversations with Lieutenant Haye and/or her husband (Technical Sergeant Patrick Haye) concerning her desire to leave her assigned shop permanently in

order to reconcile marital discord. On March 28, 1986, appellant told Captain Wright that she had been counseling her fellow crewmember, TSgt Bush, about a personal problem; and as a result, her husband had become jealous.

Later that day, Captain Wright had another telephone conversation with Lieutenant Haye, during which her husband interrupted and told Captain Wright that Lieutenant Haye had had an affair with TSgt Bush involving a pregnancy and an abortion. Captain Wright immediately reported this information to his superior, Lieutenant Colonel Webb, and an investigation proceeded from that point. Throughout the investigation, Lieutenant Haye never denied the allegations against her to either Captain Wright or Lieutenant Colonel Webb.

During a later argument with her husband, Lieutenant Haye admitted to having a separate affair with a captain in 1985. An angry TSgt Haye took his wife to the security police station for the purpose of forcing her to "confess" to the "affair" with the captain. Lieutenant Haye made a written statement confessing to such an "affair." At the time of the statement, Lieutenant Haye appeared upset, and there were visible bruises on her face.

The court-martial proceeded, and the military judge granted a defense motion to suppress the written statement made to the security police, because it had been coerced by her husband; but he denied the defense motion to suppress the derivative evidence of that statement. Lieutenant Haye was then convicted of adultery with the captain and of fraternization with TSgt Bush. The Court of Military Review found that the evidence to support the conviction of adultery with the captain was erroneously admitted by the judge. 25 MJ at 851–52. The court set aside that conviction and dismissed the charge. *Id.* at 852. The sentence, however, was approved as appropriate in relation to affirmed findings of guilty as to the fraternization with a subordinate, TSgt Bush. *Id.* at 853.

The sexual conduct of the accused in both specifications was similar. All three parties were married at the time of their alleged indiscretions. The captain, while a superior officer, was not in the chain of command with Lieutenant Haye. However, TSgt Bush was Lieutenant Haye's immediate subordinate in a four-person missile silo crew. All adulterous activity with respect to the captain happened off base, while allegations of sexual activity with TSgt Bush included, among other locations, the missile silo where they worked.

We are required to examine the record to insure that Lieutenant Haye's conviction of fraternization with TSgt Bush was based on competent evidence of her conduct with TSgt Bush, and not on evidence of a general criminal disposition. The facts of this case make that task particularly difficult.

In *United States v. Hogan*, 20 MJ 71 (CMA 1985), we were faced with a similar task. There the accused was convicted of two rapes, one of which was dismissed by the Court of Military Review. Thereafter, we found "that the risk" was "too great that the evidence of the" dismissed "rape 'spilled over' to the" one which was upheld. We suggested, however, that the spillover effect may be compensated for by adequate instructions to the members admonishing them not to merge evidence. *Id.* at 73. This task was faithfully carried out by the military judge in the instant case, wherein he made a credible effort in his instructions to comply with the requirements of *Hogan.*[*] Nevertheless, in light of the nature of the factual presentation in this case, we believe it would have been impossible for a rational factfinder, under any circumstances, to separate the evidence of one specification from the other.

---

[*] The military judge gave the following instruction:

> Each offense charged must stand on its own. Proof of one offense carries with it no inference that an accused is guilty of another offense. The Government has the burden of proving each and every element of each offense, beyond a reasonable doubt.

The evidence presented by the Government in its case-in-chief, its cross-examination of the accused, and its rebuttal was so merged into one that it is difficult to distinguish its intended purpose. Particularly in the cross-examination of the accused, the evidence of the adulterous conduct with TSgt Bush was piggy-backed to the evidence of the adulterous affair with the captain. On this record, we cannot conclude that appellant received a fair hearing on the second specification, notwithstanding the military judge's instruction. The evidence in this case as to the affair with TSgt Bush—which appellant steadfastly denied despite her admissions to the affair with the captain—was so close that there was a significant risk that the evidence of the adulterous affair with the captain was the deciding factor.

RCM 307(c)(4), Manual for Courts–Martial, United States, 1984, provides: "Charges and specifications alleging all known offenses by an accused may be preferred at the same time." RCM 601(e)(2) provides: "In the discretion of the convening authority, two or more offenses against an accused may be referred to the same court-martial for trial, whether serious or minor offenses or both, regardless whether related." RCM 906(b)(10) recognizes the authority of the military judge to sever charges and specifications "to prevent manifest injustice." Thus, military practice regarding "joinder of offenses" stands in contrast to federal criminal procedure. *Compare* Fed.R.Crim.P. 8 and 14 *with* military practice.

In federal practice, "[t]wo or more offenses may be charged... if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R.Crim.P. 8(a). *See United States v. Shue*, 766 F.2d 1122, 1134 (7th Cir.1985); *see also* 41 Am Jur 2d, *Indictments and Informations* § 209.

Military practitioners rarely move for severance of offenses. First, custom and tradition have shown that such motions are likely to be futile. Second, and perhaps more important, unified sentencing by a court-martial favors joining all known offenses into a single trial, thus exposing the accused to only one sentence for his criminal misconduct, rather than a series of separate sentences.

Nevertheless, as this case illustrates, where the criminal intent involved in two offenses is similar (although the offenses themselves are unrelated) and, significantly, where the proof of one would not be admissible to prove the other, there is a serious danger that overwhelming proof on one will "spill over" and prejudice a legitimate defense to another. One test that might be used in judging the possibility of spillover is to determine whether the evidence presented as to one charge would be independently admissible to prove the other. Mil.R.Evid. 401, 402, and 404(b), Manual for Courts–Martial, United States, 1984. *See United States v. Reynolds*, 29 MJ 105 (CMA 1989); *United States v. Gamble*, 27 MJ 298 (CMA 1988). In other words, the mere fact that the conviction for one offense is reversed would not necessarily mean there would be a prejudicial spillover if the evidence would have been admissible in any event.

To the other extreme, it is less likely that prejudice would spill over where the offenses are totally dissimilar, particularly with good instructions, *e.g.*, absence without leave and distribution of unlawful drugs. The proof of one would not normally spill over and prove the other. Lastly, special findings may well prevent spillover. The court-martial would have to articulate exactly what evidence it relied upon as to each offense.

The decision of the United States Air Force Court of Military Review is reversed; the remaining findings of guilty are set aside. The record of trial is returned to the Judge Advocate General of the Air

Force. A rehearing may be ordered on specification 2 of the Charge and the sentence as approved by the convening authority.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (dissenting):

I would affirm. The evidence supporting the conviction here was direct, strong, and distinct. The military judge issued proper and effective instructions. In my view there was no "spillover." *Cf. United States v. Hogan*, 20 MJ 71 (CMA 1985).