UNITED STATES, Appellee,

v.

Samuel J. SOUTHWORTH, Seaman Apprentice, U.S. Navy, Appellant.

No. 97–1203.

Crim.App. No. 96–0960.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 6, 1998.

Decided March 24, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, CRAWFORD, and EFFRON, JJ., joined.

For Appellant: *Lieutenant Robert Attanasio*, JAGC, USNR (argued); *Lieutenant Jeffrey K. Van Nest*, JAGC, USNR (on brief).

For Appellee: *Colonel Kevin M. Sandkuhler*, USMC (argued); *Commander D.H. Myers*, JAGC, USN, and *Lieutenant Commander Nancy Blankenship Jones*, JAGC, USN (on brief); *Colonel Charles Wm. Dorman*, USMC.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of willfully damaging military property of the United States, indecent assault, rape, drunk and disorderly conduct, and committing an indecent act, in violation of Articles 108, 120, and 134, Uniform Code of Military Justice, 10 USC §§ 908, 920, and 934, respectively. The adjudged and approved sentence provided for a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals set aside the conviction of indecent assault, dismissed that specification, and reassessed the sentence, affirming only a dishonorable discharge, confinement for 6 years,

total forfeitures, and reduction to the lowest enlisted grade.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING APPELLANT'S MOTION TO SEVER THE RAPE CHARGES PERTAINING TO SEAMAN APPRENTICE [AL] AND MISS [LP].

We affirm, for the reasons set out below.

### Factual Background

The charges arose from appellant's conduct during the weekend of August 5–7, 1995, and included two specifications of rape. The alleged victim of the first rape was a Navy enlisted woman, AL; the alleged victim of the second rape was a 13–year–old daughter of a Navy senior chief petty officer.

The defense made a timely motion for severance, arguing that it was necessary to prevent manifest injustice. The defense argued that the evidence of one incident would be inadmissible to prove the other, and that there was a substantial risk of spillover because of the similarity of the two incidents. The military judge denied the motion.

The incident involving AL occurred on Friday night, August 5. Appellant was drunk, loud, and belligerent when he returned to the barracks with two friends. He broke a mirror in the barracks hallway and then passed out, clad only in his underwear.

Appellant awakened and joined ongoing sexual activity among AL and four other sailors in a barracks room. AL was heavily intoxicated. Appellant was charged with raping AL, committing forcible sodomy with her, and committing indecent acts with her by engaging in vaginal and anal intercourse and fellatio.

Appellant contended at trial that he believed AL consented to the various sex acts. The defense argued that appellant believed AL was consenting to the various sexual acts because she eluded the quarterdeck watch to sneak into a male barracks room, arrived with a female friend but sent the friend away, engaged in group sex with various men

in the room, did not resist or cry out, successfully sneaked out of the barracks, and did not report the incident.

The incident involving LP happened on Saturday, August 6. Appellant attended an outdoor festival where he met two friends, Seaman Apprentice Pace and Airman Mercado. Pace had become involved with LP, but after LP's father complained to Pace's command, Pace was ordered to stay away from LP. In spite of the no-contact order, Pace was with LP at the festival.

Appellant, Pace, Mercado, and LP spent about 2½ hours listening to music and drinking beer. LP and Pace testified that appellant and Mercado held LP down and poured beer down her throat. LP and Pace testified that, while appellant and Mercado were holding LP down, appellant grabbed her breast and tried to kiss her. LP responded by striking appellant in the groin. Appellant became angry and threatened LP with a knife.

All four used the restrooms, but when Pace and Mercado came out of the men's restroom, they could not find appellant or LP. Pace eventually found them in a nearby storage shed, apparently having sexual intercourse. Pace and Mercado shouted at appellant to "get the hell out." When appellant and LP came out of the shed, LP was drunk and stumbling. Pace asked what they had been doing. LP said to appellant, "You f——ed me." After the three sailors returned to the anchorage, appellant was bragging about what he had done with LP. LP later wrote a letter to Pace telling him that she was sorry and that she did not want to have sex with appellant.

LP testified that appellant grabbed her arm and led her into the storage shed. She testified that she did not want to go into a dark corner with appellant, and so she sat down near the entrance. Appellant grabbed her by both arms and pulled her into a corner, where he removed her shorts and underwear, pinned her hands over her head, and raped her.

The defense conceded at trial that appellant had sexual intercourse with LP but argued that she consented. Appellant argued

that LP lied about her age, did not cry out for help, did not try to leave, did not appear upset afterwards, displayed no evidence of force or a struggle, and sent Pace a note saying that the sexual encounter was her fault. The defense argued that LP was accusing appellant of rape because she was in love with Pace and felt bad when Pace saw her having intercourse with appellant.

When the military judge denied the motion to sever, he offered the defense an opportunity to request special findings if the court-martial found appellant guilty of either rape specification. The defense did not request special findings. The military judge required the members to make special findings on the allegation of sodomy with AL, identifying whether appellant was convicted of oral or anal sodomy or both, and on the allegation of indecent acts with AL, identifying which of the acts alleged were the basis of any finding of guilty.

Defense counsel proposed a spillover instruction, which the military judge adopted without significant change. He instructed the members as follows:

> [E]ach offense must stand on its own and you must keep the evidence of each offense separate. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. In other words, proof of one offense carries with it no inference that the accused is guilty of any other offense.

The defense did not object to the instruction as given or ask for any additional instructions.

The court members acquitted appellant of raping AL but found him guilty of the lesser-included offense of indecent assault. The Court of Criminal Appeals set aside the conviction of indecent assault based on insufficient evidence. The court-martial convicted appellant of raping LP.

Appellant now argues that the evidence relating to the incident with AL impermissibly bolstered the weaker case involving LP, resulting in appellant's conviction of raping

LP. Appellant further argues that the military judge's spillover instruction was inadequate to cure the prejudice resulting from the improper joinder of offenses.

The Government argues that military practice favors joinder of all known offenses, that the military judge took adequate measures to prevent impermissible spillover, and that the findings with regard to each incident make it clear that there was no spillover.

### Discussion

■ RCM 601(e)(2), Manual for Courts–Martial, United States (1998 ed.),* provides: "In the discretion of the convening authority, two or more offenses charged against an accused may be referred to the same court-martial for trial, whether serious or minor offenses or both." RCM 906(b)(10) provides for severance of offenses by the military judge, "but only to prevent manifest injustice." RCM 906(b)(10) * "roughly parallels Fed.R.Crim.P. 14, but is much narrower because of the general policy in the military favoring trial of all known charges at a single court-martial." Drafters' Analysis of RCM 906(b)(10), Manual, *supra* at A21–53. We review the military judge's ruling for abuse of discretion. *United States v. Foster*, 40 MJ 140, 148 (CMA 1994), citing *United States v. Curry*, 31 MJ 359, 374 (CMA 1990).

■ In the past, we have considered three factors in determining whether the military judge has abused his discretion in applying the "manifest injustice" test under RCM 906(b)(10): (1) whether the evidence of one offense would be admissible proof of the other; (2) whether the military judge has provided a proper limiting instruction; and (3) whether the findings reflect an impermissible crossover. *See United States v. Curtis*, 44 MJ 106, 128 (1996), *rev'd as to sentence on recon.*, 46 MJ 129 (1997), citing with approval *United States v. Silvis*, 31 MJ 707, 709 (NMCMR 1990). *See also United States v. Curry*, *supra* at 375 (no manifest injustice whether "other crime" evidence would have

---

* These provisions of the Manual for Courts–Martial are unchanged from the 1995 edition, which was in effect at the time of trial.

been admissible); *United States v. Foster, supra* (limiting instruction reduced risk of spillover); *United States v. Haye,* 29 MJ 213, 215 (CMA 1989) ("special findings may well prevent spillover").

■ Applying the first *Curtis* factor, we hold that the evidence pertaining to one alleged rape probably would not have been admissible to prove the other, absent some showing of relevance not apparent from this record. The two alleged rapes were similar in that they both involved intoxication on the part of appellant and the alleged victim. In both cases, appellant claimed that he thought the alleged victim had consented. Both incidents appear to have been spontaneous acts as opposed to carefully planned.

On the other hand, AL was an adult woman but LP was a 13–year–old child. The incident with AL was a drunken orgy involving five male sailors and one female sailor, but the incident with LP was private vaginal intercourse. With AL, appellant joined ongoing sexual activity. With LP, he initiated the sexual activity.

Turning to the second *Curtis* factor, we note that the military judge gave a limiting instruction virtually identical to the instruction requested by the defense. Appellant cites *Haye,* in which a conviction was reversed because the military judge's instructions, which were similar to those given in this case, were inadequate to cure the prejudice resulting from spillover. The military judge in *Haye* instructed the members as follows:

> Each offense charged must stand on its own. Proof of one carries with it no inference that an accused is guilty of another offense. The Government has the burden of proving each and every element of each offense, beyond a reasonable doubt.

29 MJ at 214 n. *. This Court held that the "task" of giving "adequate instructions to the members admonishing them not to merge evidence . . . was faithfully carried out by the military judge in [that] case." *Id.* at 214. This Court reversed the conviction, not because the military judge's instructions were inadequate, but because "[t]he evidence presented by the Government in its case-in-

chief, its cross-examination of the accused, and its rebuttal was so merged into one that it [was] difficult to distinguish its intended purpose." *Id.* at 215.

In the case before us, not only did the military judge give adequate instructions, but the Government presented its case in a manner likely to preserve the distinction between the proof offered on each of the charges. In both the presentation of evidence and arguments, the prosecution carefully compartmented its case, presenting the evidence of each alleged rape separately. The prosecution's theory was that AL was incapable of consent because she was grossly intoxicated and unconscious. The prosecution's theory was that LP was threatened with a knife, subdued by physical force, and raped. Trial counsel presented her arguments and evidence pertaining to each rape charge separately. In her opening statement, she first outlined the evidence supporting the allegation of raping LP. She then outlined the case for the allegation of destroying property, which she followed with her outline of the evidence supporting the allegation of raping AL.

Similarly, in the Government's case-in-chief, trial counsel first presented the evidence on the alleged rape of LP, then on the alleged destruction of property, and finally on the alleged rape of AL. In closing arguments, the Government summarized the evidence pertaining to the rape of AL separately from its summation of the evidence pertaining to the rape of LP. There was no suggestion in closing arguments that appellant's defense, based on mistake of fact, lacked credibility because he used it twice.

We turn finally to the third *Curtis* factor. We hold that the findings do not reflect an impermissible crossover. We note that the military judge offered the defense an opportunity to request special findings, but the defense did not take the opportunity. The military judge *sua sponte* required special findings on other offenses.

The evidence itself does not suggest spillover. Instead of a strongly supported allegation joined with a weakly supported one, the Government presented strong and indepen-

dent factual cases with respect to each victim. The court members obviously distinguished between the two rape allegations, finding appellant not guilty of raping AL but guilty only of an indecent assault. The court members meticulously excepted certain allegations from their finding of guilty on the allegation of committing indecent acts.

Based on this record, we hold that the military judge did not abuse his discretion in denying the motion for severance.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.