UNITED STATES, Appellee,

v.

James D. GUTHRIE, Staff Sergeant,
U.S. Marine Corps, Appellant.

No. 99–0306.
Crim.App. No. 95–1697.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 12, 2000.

Decided June 12, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., and COX, S.J., joined. SULLIVAN, J., filed an opinion concurring in part and in the result.

For Appellant: *Lieutenant Jonathan R. Goodman,* JAGC, USNR (argued); *Lieutenant Omar R. Lopez,* JAGC, USNR (on brief); *Lieutentant Commander Linda J. Lofton,* JAGC, USN, and *Lieutenant Jennifer L. Eichenwuller,* JAGC, USNR.

For Appellee: *Lieutenant Janice K. O'Grady,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted of 3 specifications each of rape, burglary, and adultery, and 1 of disorderly conduct, in violation of Articles 120, 129, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 929, and 934, respectively. The members adjudged, and the convening authority approved, a sentence of a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court granted review of the following issues:

I

WHETHER THE GOVERNMENT VIOLATED APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO DISCLOSE RELEVANT AND MATERIAL EVIDENCE THAT WAS FAVORABLE TO THE DEFENSE.

II

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR BY NOT GIVING A SPILLOVER INSTRUCTION OR A LIMITING INSTRUCTION FOR RULE 404(b) EVIDENCE.

III

WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO PROVE THAT APPELLANT WAS GUILTY OF ADDITIONAL CHARGE I AND ITS SPECIFICATION (RAPE), AND ADDITIONAL CHARGE II AND ITS SPECIFICATION (BURGLARY).

We affirm the decision of the Court of Criminal Appeals for the reasons set out below.

Appellant's convictions stem from the rape of a woman at Aberdeen Proving Ground, Maryland, and then of two women at Fort Dix, New Jersey, between October 1991 and March 1993. After the last rape, Fort Dix officials initiated a surveillance operation. Appellant was caught peering into the bedroom window of a female petty officer. The identity of the rapist was the disputed issue at trial; and accordingly, central to both the Government and defense theories of the case.

The Government's proof included testimonial and scientific evidence that showed striking similarities in the *modus operandi* employed by the victims' attacker. As found by the Court of Criminal Appeals:

Each of the rape victims had described being grabbed from behind by a person of average height and build, who was inside their residence in the early morning. Each victim's face was covered. Each had tube socks placed on the hands and tape placed over the mouth. Each victim was raped then threatened with reprisals if the rape were reported. Each victim described the rapist's voice as whispery and kind of preppy. The rapist was described as speaking clearly, but without any profanity. Two of the victims said their assailant was wearing a condom; the other didn't know. One victim said the rapist was wearing gloves. Two of the victims

said they could hear squeaking of rubber-soled shoes as the rapist left.

In short, the Government alleged that one man was responsible for the rapes and that person was appellant. The defense did not actively contest the single-rapist theory. While conceding that the evidence showed a single perpetrator, the defense was that the rapist was someone other than appellant.

Prior to trial, appellant's individual military counsel (IMC) made two timely requests for discovery: one for all documents related to the offenses with which appellant was charged, and the other for information regarding DNA testing. *See* RCM 701, Manual for Courts–Martial, United States (1998 ed.). In several post-trial submissions, appellant now claims he and his IMC were denied four documents: (1) a DNA report dated 5 August 1993, finding fluid samples taken from the scene of the Aberdeen rape did not match appellant's; (2) a sworn statement from the Aberdeen victim in which she relates an incident of accidental intrusion into her residence by two males, neither of whom could have been appellant; (3) mental health notes which purport to differ with the second victim's testimony during sentencing; and (4) an evidence report discussing fibers and hairs removed from the scene of the third rape. When considered collectively, appellant argues that this evidence puts the trial "in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see United States v. Romano,* 46 MJ 269, 272–73 (1997).

■ Discovery in military practice is open, broad, liberal, and generous. Art. 46, UCMJ, 10 USC § 846; *United States v. Williams,* 47 MJ 621, 625 (Army Ct.Crim. App.1997), *aff'd,* 50 MJ 436, 439 (1999); *United States v. Simmons,* 38 MJ 376, 380 (CMA 1993). The duty to disclose extends to impeachment as well as exculpatory evidence. *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999), citing *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Appellant bears the burden of proving that the Government withheld discoverable evidence. *Kyles,* 514 U.S. at 434–35, 115 S.Ct. 1555; *East v. Scott,* 55 F.3d 996, 1002 (5th Cir.1995). We are not persuaded that trial counsel failed to disclose three of the items appellant claims he did not receive. Assuming that appellant did not receive the fourth item, he has suffered no prejudice.

■ With regard to the 5 August 1993 DNA lab report and the evidence report discussing fibers and hairs removed from the scene of the third rape, we find no conflict in the affidavits. Trial counsel categorically states that he gave the 5 August 1993 DNA test results report to defense counsel. While not specifically remembering the evidence report, he says, "I turned over to the defense counsel all scientific reports of which I was aware." Defense counsel's affidavit is silent concerning these documents. Thus, we are not faced with conflicting affidavits from counsel. There is nothing in the record of trial to show that defense counsel was unprepared during the testimony of the expert witnesses. Appellant's naked assertion of nondisclosure, unsupported by evidence, is without merit. The mere submission of an affidavit by an appellant does not trigger the need for a post-trial evidentiary hearing. *United States v. Ginn,* 47 MJ 236, 248 (1997).

With regard to the sworn statement from the Aberdeen victim, trial counsel avers that he gave it to the IMC, and the statement was discussed by trial and defense counsel. Defense counsel recalls receiving "at least one" of Mrs. W's statements during discovery, but is not "absolutely certain whether or not [she] received a copy of the statement in question." IMC's uncertainty does not conflict with trial counsel's affidavit. Counsel's speculation that her cross-examination of the witness might have been different does not set forth the facts necessary to warrant further proceedings. *See Ginn, supra* at 248.

■ Regarding the mental health notes, IMC attests that she does "not believe" she received these notes "in discovery." Trial counsel's affidavits are silent. Thus, there is no conflict in affidavits. Assuming, without deciding, that the notes were not disclosed and the Government's failure to disclose these notes was error, we must test for prej-

udice. Art. 59(a), UCMJ, 10 USC § 859(a). We find no prejudice.

Defense counsel chose not to cross-examine the second victim after she testified during sentencing. There is some difference between the allegedly non-disclosed notes and her sentencing testimony regarding the impact of her being raped. However, these differences are minimal, semantic in nature, and thus subject to different interpretations. Finally, we are satisfied that whatever differences exist between the victim's testimony and the social worker's notes, they would not have changed the IMC's tactical decision to treat this victim gingerly during cross-examination, if indeed there was any cross-examination at all.

The remaining granted issues—lack of a spillover instruction and the legal sufficiency of the evidence to convict him of the Aberdeen rape—are closely related. He avers that he was convicted of the offenses at Aberdeen (the most remote in time—October 1991—and the ones for which the scientific evidence was weakest) because the military judge failed to properly instruct the court members.

■ Absent plain error, failure to object to instructions as given or to request additional instructions forfeits the issue on appeal. *United States v. Maxwell*, 45 MJ 406, 426 (1996); RCM 920(f). In this case, the military judge reviewed his proposed instructions with counsel during a session under Article 39(a), UCMJ, 10 USC § 839(a), prior to instructing the members. IMC had no requests for additional instructions. The military judge did not suggest and the IMC did not request a spillover instruction. After trial counsel's closing argument on findings, the military judge gave IMC an opportunity to request an alibi instruction. Counsel declined. After instructing the court members, the military judge again asked counsel for objections or requests for additional instructions. Counsel had no objections. Accordingly, with three clear opportunities to request a spillover instruction, we find the IMC forfeited the issue.

■ The burden of persuasion in establishing plain error lies with appellant. *Unit-*

*ed States v. Reist*, 50 MJ 108, 110 (1999). Although this Court has often emphasized the importance of a spillover instruction, *United States v. Kerr*, 51 MJ 401, 406–07 (1999); *United States v. Southworth*, 50 MJ 74 (1999); *United States v. Haye*, 29 MJ 213 (CMA 1989); *United States v. Hogan*, 20 MJ 71 (CMA 1985), we find no plain error, under the facts of this case, in the failure to give that instruction.

First, the defense theory of this case did not lend itself to such an instruction. As seen in the IMC's closing argument, the defense acknowledged that the three rapes were probably perpetrated by one man, who not only watched his victims and calculated his crime, but who also watched appellant in order to "set him up" to be convicted. An instruction reminding the members to keep the evidence of each offense separate and apart from the others, that each offense must stand on its own, and not to infer guilt of one offense after a finding of guilt of a separate, similar crime would have added nothing to the defense's trial strategy.

Next, appellant was convicted because the Government used distinct evidence to prove he raped Mrs. W. in October 1991. *See Southworth*, 50 MJ at 77–78. Unlike the situations we encountered in *Hogan* and *Haye*, we find no merger of the evidence relating to each rape and burglary here. Thus, we are confident that this appellant was not convicted of the Aberdeen rape based on evidence of a general criminal disposition. *See Hogan*, 20 MJ at 73 (citing *United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir.), *cert. denied*, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939)). Trial counsel's use of similar *modus operandi* evidence to show how the perpetrator prevented victim identification, while permissible under Mil.R.Evid. 404(b), did not lead to an impermissible spillover of the evidence surrounding the Fort Dix offenses and unfairly convict appellant of raping Mrs. W.

Appellant's contention that he was convicted of the Aberdeen rape solely because he and Mrs. W were neighbors; he had successfully undergone a vasectomy, and he may

have committed other rapes (Final Brief at 18) is not convincing. Separate and apart from the evidence of the Fort Dix rapes, the Government showed appellant arose at 4:15 a.m. on October 4, 1991, the morning Mrs. W was raped, but did not leave for work until 6:20 a.m. Appellant lived across the street from Mrs. W. Mrs. W's husband left their quarters around 5:15 a.m. for physical training. When Mrs. W returned to her bedroom around 5:30 a.m. after showering, she was attacked. There were no "signs of forced entry" at the W's quarters. Both appellant and Mrs W's quarters had identical sliding glass doors at the rear of their respective residences. This door, when locked, could be opened from the outside in "less than about a second." Mrs. W never heard a car drive away after her attacker fled. Finally, scientific analysis of the fluids found in the victim's clothing, bed sheets, and associated articles pointed to an "AB secretor," such as appellant.

■ Having reviewed the evidence in its entirety, we hold that the failure to give a spillover instruction did not constitute plain error. *United States v. Powell*, 49 MJ 460, 463 (1998). After examining the evidence upon which appellant was convicted of the Aberdeen offenses, we also hold that it is legally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result):

Individual defense counsel did not raise a claim at trial that she was denied requested discovery under RMC 701. Nevertheless, after appellant's trial, in his RCM 1106(f)(4) response to the staff judge advocate's post-trial recommendation, appellant submitted an affidavit stating: "*The Defense* was not provided a copy of the sworn statement of Mrs. [W], taken at Fort Benning, Ga. on April 23, 1993.... *The Defense* did not receive a copy of the division report from Marilyn G. Chase, of the CID Laboratory located at Fort Gilliam, Georgia, dated on August 5, 1993...." (Emphasis added). On appeal before the Court of Criminal Appeals he further averred in his pleadings that two other documents were not provided to the defense, *i.e.*, mental health notes pertaining to the second alleged victim (HH) in this case, and a second evidence report discussing fibers and hairs removed from the third alleged rape victim (LH).

I would resolve this case on the basis of this Court's decision in *United States v. Ginn*, 47 MJ 236, 248 (1997). Appellant's two most recent post-trial claims of discovery violations are not supported by the record or post-trial affidavits, but only by averments in the pleadings. In this regard, I note that trial defense counsel's equivocal response (she stated that she did "not believe" she received a copy of the mental health notes,) is not sufficient to raise this claim. As for his first two claims, they are supported by his affidavit but they consist of "speculative or conclusory observations" as to defense's conduct as a whole. Under *Ginn, supra,* at 248, these claims can be rejected without ordering a factfinding hearing.