UNITED STATES, Appellee,

v.

Timothy S. DUNCAN, Private First Class,
U.S. Marine Corps, Appellant.

No. 99–0109.
Crim.App. No. 96–00701.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 8, 1999.

Decided Aug. 31, 2000.

**495**

SULLIVAN, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE, and EFFRON, JJ., and COX, S.J., joined.

For Appellant: *Lieutenant Commander Michael J. Wentworth,* JAGC, USN (argued).

For Appellee: *Lieutenant Timothy E. Curley,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irwin,* JAGC, USN (on brief); *Lieutenant Commander JoAnn W. Melesky,* JAGC, USN.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried on various dates between November 4, 1994, and May 8, 1995, by a general court-martial composed of officer members at Camp Pendleton, California. Contrary to his pleas, he was found guilty of 3 specifications of attempted murder; attempted robbery; attempted forcible sodomy; 3 specifications each of conspiracy and of rape; larceny; 6 specifications of forcible sodomy; 2 specifications of kidnapping; carrying a concealed weapon; and communicating a threat, in violation of Articles 80, 81, 120, 121, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 881, 920, 921, 925, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for life, total forfeitures, a fine of $200, and reduction to E–1. On March 29, 1996, the convening authority approved the sentence as adjudged. The United States Navy–Marine Corps Court of Criminal Appeals affirmed the findings and sentence as approved on review below. *United States v. Duncan,* 48 MJ 797 (N.M.Ct.Crim.App.1998). On September 8, 1998, the Navy–Marine Corps Court of Criminal Appeals denied appellant's motion for reconsideration.

On August 17, 1999, this Court granted review on the following issues:

I

WHETHER THE LOWER COURT ERRED IN AFFIRMING THE MILITARY JUDGE'S RULING NOT TO SEVER THE CHARGES CONCERNING MS. [DR] AND MS. [AM].

## II

WHETHER THE LOWER COURT ERRED IN AFFIRMING THE SENTENCE WHERE THE MILITARY JUDGE ABUSED HIS DISCRETION BY INSTRUCTING THE MEMBERS ON THE AVAILABILITY OF PAROLE AND REHABILITATION PROGRAMS OVER DEFENSE OBJECTION.

We hold that the military judge did not abuse his discretion in refusing to sever the charges in this case (see United States v. Southworth, 50 MJ 74 (1999)) or in giving his sentencing instructions on the possibility of parole and the existence of rehabilitation programs (see generally United States v. Greaves, 46 MJ 133 (1997)).

Private First Class (PFC) Duncan was charged with a series of brutal crimes against Ms. DR, including rape, forcible sodomy, and attempted murder, which were alleged to have occurred on June 17, 1994. He was also charged with a series of brutal crimes against Ms. AM, which again included rape, forcible sodomy, and attempted murder, on July 24, 1994. Finally, he was charged with several additional offenses against Ms. AM's male companion and RS, a bystander.

The Court of Criminal Appeals stated:

The evidence establishes that on 17 June 1994, the appellant and PFC Glenis Gambles rented a small, white, two-door Mazda 323. With Gambles driving, they picked up [Ms. DR] who was hitchhiking in Oceanside. She immediately announced to them that she was not a prostitute. She had become concerned upon realizing that the driver of the car was a Black man, since she had experienced some troubles before with Black men. After they refused to stop and let her out where she asked, she became panicked and begged them to let her out. She was being told that they were going to kill her. She tried to kick out the window of the back seat where she was riding. Eventually, the appellant and Gambles stopped in a remote area. Both the appellant and Gambles struck [Ms. DR] several times with their fists and kicked her. She was forced to remove her clothes, except for her underpants. The appellant forced her to orally copulate him while simultaneously Gambles raped her from the rear and attempted to anally sodomize her, after ripping off her underpants. After Gambles got menstrual fluid on his clothing, he became enraged, pulled her from the car and beat her. Gambles then forced her back into the car, drove to another area, parked and beat her some more. She went limp and "played dead." They got into the car and started as if they were driving away, then turned and drove toward where she was lying on the ground. She jumped up and ran away. All of her possessions that she was carrying were taken away in the car. The appellant later gave her pager to his aunt and asked her to change the number. The appellant also bragged to some of his fellow Marines about having robbed and raped a girl whom he and Gambles had picked up.

The evening of 24 July 1994, the appellant, PFC Miller, and PFC Gambles agreed to go out and rob someone of their money. They set out on this expedition with Miller driving his pickup truck. After driving around, they spotted two females at a phone booth and approached them to rob them, but the females got into a car and left before the robbery could be completed. Apparently frustrated, the trio drove to Buccaneer Beach in Oceanside. There [Ms. AM] and her friend, Jordan McLean, were sitting on the beach. Richard Schnittger and his eight months-pregnant wife were sitting in a car nearby, but not close enough for Schnittger to recognize [Ms. AM] whose family he'd known for 8 years. The appellant and Gambles walked past [Ms. AM] and McLean with the appellant carrying a 40-ounce bottle of St. Ides beer. They turned and approached the couple and the appellant struck McLean on the head with the bottle with sufficient force to break it. While the appellant beat up McLean, Gambles forced [Ms. AM] along the beach and forced her to strip off her clothing, threatening her with the .380 Colt handgun which he had thoughtfully brought along. Schnittger

saw the appellant beating McLean and got out of his car to try to intervene. Gambles, who was dragging a naked [Ms. AM] along the beach, saw him approaching and fired the gun in his direction, motivating Schnittger to return to his car and depart the area. After patting down McLean's pockets, the appellant joined Gambles and struck [Ms. AM] with his fist. He then forced [Ms. AM] to orally copulate him while Gambles raped her from the rear. They then forced [Ms. AM] into Miller's truck and drove her to another area, beating, raping and sodomizing her repeatedly along the way. They told her that they were going to kill her. They parked in a dark place, forced [Ms. AM] out of the truck, and repeatedly raped and sodomized her. After they completed their sexual degradation of [Ms. AM], the appellant lined her up and kicked her off a cliff.

About 5 days later the appellant learned that Miller was an unauthorized absentee. The appellant told Corporal Swenson that Miller had been messed up by them having hit a guy over the head with a bottle and raped a girl the previous week. He said that if Miller went to the police he would kill him.

48 MJ at 804–05.

— — —

## SEVERANCE

The first issue we will address is whether the military judge erred in refusing to sever the trial of the offenses concerning Ms. AM from those concerning Ms. DR. Appellant notes that severance is required under RCM 906(b)(10), Manual for Courts–Martial, United States (1994 ed.), to prevent "manifest injustice" and, citing the decision of this Court in *United States v. Southworth, supra* at 76, he asserts that a manifest injustice occurred in his case. He argues that evidence of the offenses against Ms. AM was not admissible to show his guilt of the offenses against Ms. DR; the military judge's limiting instructions and other bifurcation measures were ineffective; and impermissible crossover was a real possibility in his case. He also argues that refusal to sever

these offenses violated his right against self-incrimination. We disagree.

■ Our starting point in resolving this case is recognition of the fact that joinder of offenses at a court-martial is more permissive than joinder in federal district courts. *United States v. Southworth, supra* at 76; *see* RCM 601(e)(2) ("two or more offenses .... may be referred to the same court-martial for trial, whether serious or minor offenses or both, regardless whether related"). *Cf.* Fed.R.Crim.P. 8 ("Two or more offenses may be charged in the same indictment .... if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."). *See generally United States v. Keith,* 1 USCMA 442, 448, 4 CMR 34 (1952). However, in view of "the same or similar character" of the charged offenses in this case, there was no joinder problem under either rule. *See United States v. Coleman,* 22 F.3d 126, 131–134 (7th Cir.1994); *United States v. Alexander,* 135 F.3d 470, 475–76 (7th Cir.), *cert. denied,* 525 U.S. 855, 119 S.Ct. 136, 142 L.Ed.2d 110 (1998).

■ We also note that a military judge, like a federal district judge, has power to sever the trial of offenses in certain circumstances. *See* RCM 906(b)(10); *cf.* Fed. R.Crim.P. 14. This Court has recognized the difference in wording between the military judge's power ("only to prevent manifest injustice") and the federal district judge's power ("[i]f it appears that a defendant or the government is prejudiced by a joinder"). *See United States v. Southworth, supra* at 76; *cf. United States v. Curry,* 31 MJ 359 374 (1990). In any event, federal courts, both military and civilian, have been concerned with preventing impermissible spillover in various ways from the proof of one offense into the trial of another offense. *See United States v. Southworth, supra* at 76; *see United States v. Foutz,* 540 F.2d 733, 736 (4th Cir.1976). In general, "an abuse of discretion will be found only where the defendant is able to show that the denial of a severance

caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him with a better opportunity for an acquittal. *Vest,* 116 F.3d at 1190; *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)." *United States v. Alexander,* 135 F.3d at 477.

■ In light of the three-pronged test of *Southworth,* we conclude that the military judge did not abuse his discretion in holding that appellant could receive a fair trial on all the charges in this case. (R. 111) Admittedly, the judge recognized that the evidence of Ms. AM's rape and brutalization would not be admissible to show appellant's rape and brutalization of Ms. DR, one month earlier. However, this evidentiary judgment alone did not require that he grant the severance motion. *See United States v. Southworth, supra* at 77–78. In response to this problem, the military judge gave limiting instructions three times to the members to consider these offenses separately. (R. 700–701) (R. 1322) (R. 1835). 50 MJ at 77; *United States v. Dixon,* 184 F.3d 643, 646 (7th Cir.1999). He also took steps to bifurcate the presentation of evidence and argument by the prosecution to avoid the risk of impermissible spillover. (R. 901–902, 1799–1806). 50 MJ at 77; *United States v. Dixon, supra* at 646. In our view, regardless of which offenses were proven first, we are confident that the military members were able to follow their instructions to consider them separately. *Id.* at 646 ("The ability of a jury to follow instructions is instrumental to our theory of trial."); *see also United States v. Coleman,* 22 F.3d at 134–35 (elevated concern for unfairness when "same or similar character" offenses are joined, but severance not mandated); *United States v. Hogan,* 20 MJ 71, 73 (CMA 1985) ("chances of their cumulating the evidence ... substantially diminished" by proper instructions from judge).

■ We also conclude that the military judge did not abuse his discretion in holding that appellant's defenses would not be "confounded" or destroyed by a joint trial. Appellant's defense to the alleged rape of Ms. DR was that she consented to the act of sexual intercourse with appellant. Appellant's defense to the alleged rape of Ms. AM was voluntary intoxication and evidentiary insufficiency. These defenses, raised on different occasions with respect to different alleged victims, were neither logically nor practically inconsistent. Moreover, the mere fact that appellant asserted his right of self-incrimination with respect to his alleged crime against Ms. AM, but not with respect to the alleged crimes against Ms. DR, did not require a severance. *See United States v. Dixon, supra* at 646. Based on all the circumstances of this case, we conclude that the military judge did not abuse his discretion in denying the defense motion for severance. *United States v. Foster,* 40 MJ 140, 148 (CMA 1994); *see also United States v. Kerr,* 51 MJ 401, 406–07 (1999) (entire record should be considered in evaluating judge's ruling on spillover questions).

## SENTENCE INSTRUCTIONS

The other issue in this case is whether the military judge erred in instructing the members over defense objection concerning availability of parole and rehabilitation programs in the military justice system. These instructions came in response to questions by the members addressed to the military judge. The specific questions were: "Will rehabilitation/therapy be required if PFC Duncan is incarcerated?" and "In military justice, is parole granted or are sentences reduced for good behavior? If so, do these reductions apply to a life sentence?" (R. 2035–37) Defense counsel objected to answering both questions because they concerned collateral consequences, and he requested that the members be simply told that these questions were "off-limits." (R. 2040)

The military judge agreed in part with defense counsel but rejected his suggested instruction. (R. 2039) Instead, he gave the following instructions:

Just to refresh your recollection, there have been two questions that have been asked. I'm going to answer the second question first and then the first question.

I'll advise you what the questions were before I answer them. The first question is: In military justice, is parole granted or are sentences reduced for good behavior? If so, do these reductions apply to a life sentence?

Now, members of the court, in answering this second question first, it is important to remind you of the nature of a court-martial in the military justice system. It is a completely independent agency temporarily created to determine the issue of guilt or innocence in a case and impose an appropriate sentence in the event of a conviction.

After trial a variety of reviewing and higher authorities review the case. As an independent agency, you must not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or other authority. You must do what you think is right today.

Now, parole is available to an accused sentenced by a military court to serve confinement, including life imprisonment. The exercise of parole, however, depends upon several factors, including but not limited to the length of sentence to confinement, the nature of the convicted crimes, and the conduct of the accused during the period of confinement.

You should determine, in terms of confinement, what you feel is appropriate for this accused. *Under these circumstances, do not, and I say again, do not be concerned about the impact of parole.* When selecting an appropriate sentence, you should select a sentence which will best serve the ends of good order and discipline, the needs of the accused, and the welfare of society.

Now, I'm turning to your second question, which is: Will rehabilitation/therapy be required if PFC Duncan is incarcerated? Members of the court, you are advised that there are appropriate alcohol and sex offense rehabilitation programs available to the accused should he be confined as a result of the sentence in this case. The accused is not required to participate in any program of rehabilitation and treatment, but there are strong and usually effective incentives for him to do so while confined.

Now, Colonel Colemen, do these responses answer your questions?

Pres: Yes, sir.

(R. 2044) (Emphasis added.)

On appeal, appellant again argues that the military judge erred in giving the instructions noted above because parole and rehabilitation programs are "collateral consequences" of a court-martial sentence. He asserts that the general rule at courts-martial is that it should concern itself "with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." Appellant's Final Brief at 9. He contends, therefore, that the military judge should "[o]rdinarily ... reply that 'collateral consequences are not germane'"; and he cites *United States v. Griffin*, 25 MJ 423, 424 (CMA 1988), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988), and *United States v. Quesinberry*, 12 USCMA 609, 612, 31 CMR 195, 198 (1962), for this rule, at least where the accused opposes the instruction. *See United States v. Griffin, supra* at 424.

We think this case is covered by our more recent decision in *United States v. Greaves*, 46 MJ 133 (1997). There, we rejected a bright-line rule prohibiting instructions on collateral consequences of a court-martial and instead adopted a more flexible approach focusing on the military judge's responsibility to give "appropriate sentence instructions." While the military judge's discretion in choosing whether to instruct upon such "collateral" matters is broad, he or she is required to give legally correct instructions that are tailored to the facts and circumstances of the case. *United States v. Greaves*, 46 MJ at 139 (citing *United States v. Cook*, 11 USCMA 579, 581, 29 CMR 395, 397 (1960), and *United States v. Slaton*, 6 MJ 254, 255 (CMA 1979)). Most importantly, military judges must give members answers which are clear. *United States v. Griffin*, 25 MJ at 424. When the members ask whether an accused will be required to participate in a rehabilitation program, as they did in this

case, it is appropriate for the judge to answer if he or she can draw upon a body of information that is reasonably available and which rationally relates to the sentencing considerations in RCM 1005(e)(5). The availability of parole and rehabilitation programs are issues of general knowledge and concern, and as such they may be instructed upon, especially when requested by the members. *See generally* RCM 1005(a) ("The military judge shall give the members appropriate instructions on sentence") and RCM 801(a)(5) (duty of military judge to "[i]nstruct members on questions of law and procedure which may arise").

█ In the case at bar, the members themselves interrupted their deliberations to inquire about the possibility of parole and the existence of rehabilitation programs. *See* RCM 1005(b); *see generally* Article 46, UCMJ, 10 USC § 846, and RCM 913(c)(1)(F) (power of members to seek instructions from military judge and further evidence). Moreover, these inquiries were reasonably related to consideration of the heinous nature of appellant's offenses (*see generally* RCM 1001(b)(4) (evidence in aggravation)) and the possibility that he might be released in the future unreformed into civilized society. *See*

*generally* RCM 1001(b)(5) (evidence of rehabilitative potential). In view of the sheer brutality of appellant's crimes, it is quite clear that these were "crucial military concern[s]" which were properly addressed by the military judge. *See United States v. Greaves,* 46 MJ at 139.

█ In any event, any error by the judge in instructing on these matters was clearly harmless. Article 59(a), UCMJ, 10 USC § 859(a). The military judge also instructed the members that, although parole existed in the military justice system, they could not consider it in arriving at an appropriate sentence for appellant. Moreover, his instruction on rehabilitation programs also benefited appellant because it strongly suggested that such programs did exist and that appellant would likely participate in them as a matter of prison exigency. Accordingly, we conclude that these instructions, even if erroneous, did not materially prejudice appellant's substantial rights.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.