UNITED STATES, Appellee

v.

Charles W. SIMPSON, Specialist
U.S. Army, Appellant

No. 01-0047

Crim. App. No. 9700925


United States Court of Appeals for the Armed Forces

Argued December 11, 2001

Decided June 3, 2002

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., and SULLIVAN, S.J., joined.

<u>Counsel</u>

For Appellant: <u>Joseph W. Kastl</u> (argued); <u>Colonel Adele H. Odegard</u>, <u>Lieutenant Colonel David A. Mayfield</u>, <u>Major Jonathan F. Potter</u>, and <u>Captain Sean S. Park</u> (on brief); <u>Captain David S. Hurt</u>.

For Appellee: <u>Captain Karen J. Borgerding</u> (argued); <u>Major Daniel G. Brookhart</u> and <u>Major Paul T. Cygnarowicz</u> (on brief); <u>Colonel Steven T. Salata</u>.

Military Judges:  Linda K. Webster, Paul L. Johnston, and
                  Robert F. Holland


<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by a general court-martial consisting of officer and enlisted members of indecently assaulting Private First Class (PFC) BW on April 2, 1993; attempting to rape AB on November 18, 1995; obstructing justice by attempting to persuade AB not to report him for rape; and forcible sodomy of PFC TR on August 3, 1996. The members sentenced him to a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to E-1. The convening authority approved the sentence, and the Army Court of Criminal Appeals affirmed.

We granted review of two issues:

> I. WHETHER A DANGEROUS SPILLOVER EFFECT PREJUDICED APPELLANT WHEN CHARGES INVOLVING THREE SEPARATE WOMEN IN THREE SEPARATE INCIDENTS WERE MERGED AT A SINGLE COURT-MARTIAL.
>
> II. WHETHER APPELLANT'S CONVICTION OF ATTEMPTED RAPE SHOULD BE SET ASIDE BECAUSE THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE IMPROPERLY GAVE INSTRUCTIONS TO THE PANEL MEMBERS USING A STATEMENT NOT INTRODUCED INTO EVIDENCE.

For the reasons set out below, we affirm.

FACTS

On April 29, 1996, charges were preferred against appellant alleging he indecently assaulted PFC BW, and that he raped and committed adultery with AB, a civilian, then obstructed justice by trying to dissuade her from reporting the rape. He was also

2

charged with indecently assaulting another woman, but this charge was later dismissed.  On July 15, 1996, a session was held under Article 39(a), UCMJ, 10 USC § 839(a), and following arraignment, the case was set for trial on September 19, 1996. However, after PFC TR reported appellant's criminal misconduct, the initial charges were withdrawn and new charges preferred. The new charges included offenses previously referred to trial, as well as the allegation that appellant committed forcible sodomy with PFC TR on August 3, 1996.

The indecent assaults against all the victims had a familiar pattern.  The indecent assault of PFC BW took place after appellant, his friend PFC Ellis, and the victim -- who was a good friend of both Ellis and appellant -- spent the night drinking and the victim became intoxicated, sick, and unable to move without help.  The sodomy with PFC TR occurred after TR became "really drunk," sick, and immobile.  After TR was put to bed by a friend, appellant, who was on staff duty, entered the room improperly.  Despite PFC TR's protestations and attempts to physically push him away, he removed her underwear and performed oral sex.

The events leading to the charges of rape and adultery with AB on November 18, 1995, are generally not in dispute.  On the evening in question, appellant, whom AB knew as "Bug" for three years, and PFC Ellis visited AB and her two children.  AB's

3

husband was deployed at the time.  Also present were the two children of KT, AB's friend, who lived across the street.

After a night of drinking, PFC Ellis left the apartment at 11:00 p.m.  AB and appellant talked for ten or fifteen minutes, at which time AB informed appellant that she was tired and was going to bed.  After putting on her night clothes, she discovered that one of her toddlers had vomited.  Appellant helped AB change the child's bed sheets.  After using the bathroom at about 12:30 a.m., AB passed out on the hallway floor.  The next thing she remembered was appellant helping her into bed and later remembered KT picking up her two children at about 1:15 a.m.  She next remembered waking up when her daughter cried, and at that time she "felt something in [her] vagina -- penis went in and out."  Appellant got out of the victim's bed and took the crying daughter a juice bottle.  Appellant then returned to the victim's bed and pulled her underwear down again.  AB responded "no" to appellant's invitation for sex. Shortly thereafter, appellant left the apartment, at which point AB called KT and informed her that she had been raped by "Bug."

Prior to the Government's case-in-chief, trial defense counsel moved to sever the charges, arguing that trying all these different sexual offenses together would unduly prejudice appellant.  The military judge denied this motion but stated that he would give an "appropriate anti-crossover instruction."

During the Government's case-in-chief, trial defense counsel cross-examined AB and asked: "[D]o you recall telling the CID agent that, 'the next thing I remember was feeling Bug's penis on my butt.' Do you remember that?" AB responded: "That was the -- after he come back from the bathroom. But the first time when my daughter woke up, his penis was in my vagina." AB's statement to CID was never offered as substantive evidence.

While instructing the members on the rape charge and its lesser offenses, the military judge instructed the members that the first element of the offense of attempted rape was "that the accused did a certain act; that is, he pressed his penis against [B's] -- I should say [AB's] body[.]" Later on, without objection from either trial or defense counsel, the military judge, sua sponte, gave a spillover instruction, cautioning the members to keep the evidence of each offense separate, and informing them that they could use the evidence of the earlier offenses, if the members believed such offenses occurred, for the limited purpose of showing appellant's plan or design to take advantage sexually of women who were under the influence of alcohol. To make sure that the members understood this instruction, he repeated it.

## DISCUSSION

Appellant argues the military judge's refusal to sever the charges caused a manifest injustice by making three unreliable

5

witnesses more credible.  He also argues the military judge committed plain error when he used a statement that was never placed in evidence in order to fashion an instruction on attempted rape.

The military judge did not abuse his discretion when he denied appellant's motion to sever the charges in this case. The military justice system encourages the joinder of all known offenses at one trial (RCM 601(e)(2), Manual for Courts-Martial, United States (2000 ed.)[*], and permits a motion for "[s]everance of offenses ... only to prevent manifest injustice."  RCM 906(b)(10).  "In general, 'an abuse of discretion will be found only where the defendant is able to show that the denial of a severance caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him with a better opportunity for an acquittal.'"  United States v. Duncan, 53 MJ 494, 497-98 (2000), quoting United States v. Alexander, 135 F.3d 470, 477 (7th Cir.), cert. denied, 525 U.S. 855 (1998).

To determine whether a military judge has failed to prevent a manifest injustice and denied an appellant a fair trial, we apply the three-prong test found in United States v. Southworth, 50 MJ 74, 76 (1999).  In so doing, we find no abuse of

---

[*] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

discretion in the military judge's ruling that appellant would receive a fair trial on all the charges. The first Southworth factor asks "whether the evidence of one offense would be admissible proof of the other." Id. We find no error in the military judge allowing the members to decide whether the offenses occurring earliest in time could be used for the limited purpose of demonstrating appellant's tendency to take advantage sexually of women who were intoxicated or under the influence of alcohol. Evidence of such a pattern of conduct was admissible under Mil.R.Evid. 404(b), Manual, supra, which permits evidence of "other crimes, wrongs or acts" to prove facts other than a person's character. Since the evidence was probative of a material issue other than character, and was offered for some purpose other than to demonstrate appellant's propensity or predisposition to commit crime, it was admissible. See United States v. Castillo, 29 MJ 145, 150 (CMA 1989); see also Huddleston v. United States, 485 U.S. 681, 687-89 (1988); United States v. Tanksley, 54 MJ 169, 175-76 (2000).

The second prong of the Southworth test asks "whether the military judge has provided a proper limiting instruction." 50 MJ at 76. Following the trial counsel's compartmentalized presentation of evidence relating to each of the victims, the military judge's instructions were crystal clear: members were instructed to keep evidence of each offense separate; that the

burden was on the prosecution to prove each and every element of each offense beyond a reasonable doubt; and that proof of guilt of one offense created no inference that appellant was guilty of any other offense. The military judge then provided the following limiting instruction:

> Now, despite my instruction to you that you may not infer that the accused is guilty of one offense because his guilt may have been proven on another offense, and that you must keep the evidence with respect to each offense separate, there is, however, some evidence that has been presented with respect to some of the alleged incidents--which may also be considered for a limited purpose with respect to other of the incidents. More specifically, you may consider evidence concerning the circumstances under which the earliest in chronological order incident allegedly happened--namely, the April '93 incident allegedly involving [BW], or the second chronologically of the alleged incidents--namely, the November '95 alleged incident with [AB], or both of them with respect to the last of the charged offense--namely, the August '96 incident with [TR] -- for this limited purpose and this limited purpose only: You may consider evidence of the earlier event if you believe it happened, and the circumstances of the earlier event as you find them for the limited purpose of their tendency, if at all, to prove a plan or design on the part of the accused to take advantage sexually of women who are under the effect of alcohol. Listen to me carefully again.
>
> You may consider the evidence from earlier transactions for the limited purpose of its tendency, if any, to prove a plan or design on the part of the accused to take advantage sexually of women who are under the effect of alcohol in regard to the later of the incidents.... You're specifically advised that you may not consider this evidence for any other purpose and you may not conclude or infer from the evidence that there are allegations against the accused from three different women, that the accused is necessarily a bad person or has criminal

tendencies, and he therefore, committed one or more of the offenses. And further, you may not consider from the fact that there are allegations from three different witnesses about three different transactions, that that makes it any more or less likely that any of the three women are credible as witnesses.

Finally, in light of the military judge's instructions and the evidence of record, we conclude that the findings do not "reflect an impermissible crossover." 50 MJ at 76; see Duncan, supra; United States v. Foster, 40 MJ 140 (CMA 1994); United States v. Curry, 31 MJ 359 (CMA 1990). Accordingly, the military judge did not abuse his discretion in denying appellant's motion for a severance.

"The propriety of the instructions given by a military judge is reviewed de novo." United States v. Quintanilla, 56 MJ 37, 83 (2001); United States v. Grier, 53 MJ 30, 34 (2000); United States v. Maxwell, 45 MJ 406, 425 (1996). A failure to object to an instruction prior to commencement of deliberations waives the objection in the absence of plain error. RCM 920(f); Grier, supra. The burden is on appellant to establish plain error. We find no plain error in the judge's instruction.

After instructing the members on the elements of rape, the military judge then advised them that the offense of attempted rape, in violation of Article 80, UCMJ, 10 USC § 880, was a lesser-included offense of Charge 1 and its specification, alleging the rape of AB. He instructed the members that in

order to find appellant guilty of attempted rape, they had to be convinced by legal and competent evidence, beyond a reasonable doubt, of four elements:

> The first element is that on or about 18 November '95, at Fort Drum, New York, that the accused did a certain act; that is, he pressed his penis against [B's] –- I should say [AB's] body[.]

Appellant now attacks the military judge's instruction as improper on two fronts. First, he alleges that the offense of attempted rape was not reasonably raised by the evidence. Citing United States v. Griffin, 50 MJ 480 (1999), he argues that any instruction on this lesser-included offense was improper. Contending that the sole issue surrounding the rape accusation was consent, not penetration, appellant argues that penetration became an issue only when the military judge improperly used AB's statement to CID as substantive evidence in his instruction. We disagree.

During his closing argument, defense counsel attacked both the lack-of-penetration and lack-of-consent issues. At the outset of defense counsel's closing argument, he asserted that the physical evidence failed to show whether or not appellant and AB had any sexual contact. Later, referring to his cross-examination of AB, defense counsel argued that the statement provided by AB to investigators soon after the incident was more accurate than her in-court testimony and should, therefore, be

believed.  In asking the court members to find a lack of penetration, defense counsel argued:  "Well, on cross-examination, it was brought out that, 'Well, I then felt Bug's penis on my butt.'...  Penis on the butt is not penetration."  Accordingly, while an instruction that incorporates evidence not admitted at trial may constitute error, in the absence of an objection, and given trial defense counsel's use of that evidence in his closing argument, we conclude there was no plain error.

Appellant contends that his defense counsel asked AB the question concerning her statement to CID shortly after the offense occurred solely to impeach her.  Such cross-examination, he argues, did not amount to the introduction of substantive evidence that would give rise to a lesser-included-offense instruction.  See United States v. Taylor, 44 MJ 475, 479 (1996)("When a witness' prior inconsistent statement is offered for impeachment, it is not being offered for its truth.").  However, to ensure that the answers given may only be used for impeachment purposes, the defense must request a specific instruction under Mil.R.Evid. 105.  The failure to request such an instruction constitutes a waiver absent plain error.  Here, the defense made no such request.

Furthermore, there is evidence independent of AB's statement to CID that permitted, if not required,  the military

judge to give an instruction on the lesser-included offense of attempted rape. AB's response to the trial defense counsel's question concerning her statement to CID and "feeling Bug's penis on [her] butt" was explained as follows: "That was the -- after he come back from the bathroom. But the first time when my daughter woke up, his penis was **in** my vagina." (Emphasis added.) With the testimony in this posture, an attempted rape instruction was proper. See Sansone v. United States, 380 U.S. 343, 350 (1965)("A lesser-included offense instruction is ... proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense."); Griffin, supra.

Accordingly, if there was any error in the military judge's instructing the members that the first element of the offense of attempted rape was that appellant "pressed his penis against AB's body," it was certainly not plain error. See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973)(an instruction should be considered in context of record of trial and instructions as a whole, not judged in "artificial isolation").

The decision of the United States Army Court of Criminal Appeals is affirmed.

12