Chief Judge GIERKE
delivered the opinion of the Court.
Following the trial of Private Eric M. McNutt, the military judge met with defense and Government counsel to critique their performance, in what is often called a “Bridging the Gap” session.[1] During that session, the military judge voluntarily disclosed how he determined the length of Appellant’s sentence. The military judge explained that he sentenced Appellant to seventy days of confinement rather than sixty days because he was aware of the correctional facilities’ policy of granting five days of confinement credit per month for sentences that include less than twelve months of confinement.[2] The United States Army Court of Criminal Appeals affirmed Appellant’s sentence,[3] finding that the military judge’s knowledge about the Army policy was extraneous but properly within the common knowledge of a military judge and that Military Rule of Evidence (M.R.E.) 606(b) did not provide a basis for impeaching Appellant’s sentence.[4]
We hold that the military judge improperly considered the collateral administrative effect of the “good-time” policy in determining Appellant’s sentence and this error prejudiced Appellant. Accordingly, the decision of Army Court of Criminal Appeals is reversed as to sentence and the case is remanded to that court to provide the appropriate relief in light of Appellant’s improper confinement for ten days.

BACKGROUND

Appellant was stationed at Fort Campbell, Kentucky. On January 8, 2001, Appellant left his unit without permission and remained absent until February 2, 2001. On February 20, 2001, Appellant again absented himself without authority and returned to his hometown of Belton, Missouri. About a month later, he surrendered to military authorities on March 19, 2001, at Fort Campbell, Kentucky. Appellant remained under military control, awaiting disposition, until he absented himself without authority a third time on April 27, 2001. He was absent until he was apprehended at his house in Belton by the County Sheriff on December 5, 2001. Appel *18 lant was charged with one specification of desertion terminated by apprehension, and two specifications of unauthorized absence, in violation of Articles 85 and 86 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885 and 886.[5] Pursuant to Appellant’s pleas, the military judge found him guilty and sentenced Appellant to confinement for seventy days, a bad-conduct discharge, forfeiture of $500 pay per month for three months, and reduction to pay grade E-l.
After Appellant’s court-martial, Captain (Cpt) Shahan, Appellant’s trial defense counsel, submitted a letter to the convening authority pursuant to Rule for Courts-Martial (R.C.M.) 1105, asserting that the military judge erred in formulating the length of confinement.[6] In the letter, Cpt Shahan asserted that during the “Bridging the Gap” session with counsel after Appellant’s sentencing, the military judge told trial counsel and defense counsel that he wanted to ensure Appellant actually served sixty days of confinement.[7] Cpt Shahan asked the convening authority to “disapprov[e] 10 days of the adjudged confinement” because the military judge had inappropriately considered “good-time” credit when determining Appellant’s sentence. Specifically, the defense counsel averred:
After the guilty plea, the military judge informed the trial counsel, Cpt Gisela Westwater, and me, that the reason he sentenced Pvt McNutt to 70 days was because he knew Pvt McNutt would receive 10 days of “good time” credit, and that he wanted to be sure that Pvt McNutt served 60 actual days.
Further, Cpt Shahan stated that “[i]t is common knowledge in the military justice system that the Army Regional Corrections Facilities (RCFs) credit service members with 5 days per month of ‘good time’ on sentences of 12 months or less.” Cpt Shahan asserted that, based on United States v. McLaren,[8] it is improper for the military judge or panel members to consider collateral issues such as “good-time” credit.
In affirming the findings and sentence, the Army Court of Criminal Appeals noted that Appellant could not impeach his sentence because none of the three exceptions to the M.R.E. 606(b)[9] applied. Specifically, the lower court stated that if the military judge “improperly considered extraneous information,” then prejudice towards Appellant would be presumed. The Army Court opined that because the Army regulation regarding “good-time” credit was “not mentioned at trial, admitted into evidence, or judicially noticed,” the information that the military judge relied on was “extraneous.”[10] However, the lower court then concluded that knowledge of the Army’s “good-time” policy was within the general and common knowledge any military judge brings to deliberations.[11] Therefore, because the military judge did not rely on “improper” extraneous information, there was “no basis for impeaching [Appellant’s otherwise lawful and appropriate sentence.”[12]

*19
DISCUSSION

I. The military judge erred in considering the Army’s good-time policy in assessing Appellant’s sentence
In general, “‘courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regal’d to the collateral administrative effects of the penalty under consideration/ ”[13] Therefore, when military judges are asked by members about possible collateral consequences of a particular sentence, the “appropriate reply ordinarily is to reaffirm the idea that collateral consequences are not germane.”[14] The reason for the preference is that “the pm-ported effect of a collateral [consequence] cannot be used to becloud the question of an accused’s guilt or innocence.”[15] To ignore it “would mean that [military judges] would be required to deliver an unending catalogue of administrative information to court members____ [T]he waters of the military sentencing process should [not] be so muddied.”[16]
Although military judges and members should not generally consider collateral consequences in assessing a sentence, this is not a “bright-line rule.”[17] In certain circumstances, therefore, it may be appropriate for the military judge to instruct on collateral matters.[18] In deciding whether the military judge erred in giving such instructions, we will take a flexible approach focusing on the military judge’s responsibility to give “legally correct instructions that are tailored to the facts and circumstances of the case.”[19] For example, the “availability of parole and rehabilitation programs are issues of general knowledge and concern, and as such they may be instructed upon, especially when requested by the members.”[20] However, in such a situation, the military judge should then instruct the members that although the possibility of parole exists in the military justice system, “they could not consider it in arriving at an appropriate sentence for [the] appellant.”[21]
Similarly, in this case, the general preference for prohibiting consideration of collateral consequences is applicable to the military judge’s consideration of the Army “good-time” credits.[22] Each accused de *20 serves individualized consideration on punishment. Thus, “proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof.” [23] In other words, sentence determinations should be based on the facts before the military judge and not on the possibility that Appellant may serve less time than he was sentenced to based on the Army's policy. Moreover, “good-time” credit is awarded as a consequence of the convicted servicemember’s future behavior — behavior that may or may not take place. Therefore, the possibility of “good-time” credit should not be considered by the members or the military judge when deciding what sentence is appropriate.
We agree with the lower court that, practically, the military judge could not be precluded from being aware of the Army policy because it falls within his general knowledge of the legal system. But this does not mean that he should consider it in determining Appellant’s sentence. We hold that the military judge erred in considering the Army’s “good-time” credit policy when he assessed Appellant’s sentence.
II. Military Rule of Evidence 606(b) does not apply to military judges
The Army Court of Criminal Appeals appropriately cautioned that “the core of the deliberative process remains privileged, and military judges should refrain from disclosing information during ‘Bridging] the Gap’ sessions concerning their deliberations, impressions, emotional feelings, or the mental processes used to resolve an issue before them.”[24] However, the Army Court affirmed Appellant’s sentence by relying on M.R.E. 606(b) and our holding in United States v. Straight,[25] We conclude that M.R.E. 606(b) applies to court members only and, thus, does not apply to protect the statement of the military judge in this case when he voluntarily disclosed that he considered improper information in determining Appellant’s sentence.[26]
A. The plain meaning of M.R.E. 606(b)
The task of determining the meaning of M.R.E. 606(b) and to whom it should apply begins with a reading of the plain language of the rule.[27] Notably, the plain meaning of M.R.E. 606 is that it applies to the “competency of [a] court member as [a] witness.” M.R.E. 606(b) does not include any language that indicates it applies to a trial by military judge alone, and the discussion following the rule does not address the issue.[28] As the Supreme Court has repeatedly emphasized, “[i]t is well established that ‘when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.’ ”[29] “Had *21 the drafters of the rule wanted to use broader language such as ‘trier of fact’ [to include judges, juries, and arbiters], they could have easily done so.”[30]
Moreover, M.R.E. 605 explicitly addresses the competency of a military judge as a witness. Similar to subsection (a) of M.R.E. 606, M.R.E. 605(a) states that a military judge may not testify as a witness at a court-martial over which he is presiding. But M.R.E. 605 does not include a subsection (b) that mirrors the language in M.R.E. 606(b), which protects members’ deliberations. “Given the absence of such a provision, it can be inferred that the drafters of said rule understood that there were certain extraordinary situations in which a judge may be called upon to explain his verdict or rulings in a subsequent proceeding.”[31]
B. An analysis of the precedent applying M.R.E. 606(b)
In deciding that M.R.E. 606(b) does not apply to protect the voluntary disclosure of the military judge in this case, we are faced with precedent from this Court that is inconsistent with our holding.[32] We conclude that Rice and Gonzalez misconstrued the case law cited to support the holdings in those cases. Additionally, the circumstances of the cases that this Court relied on in Rice and Gonzalez are factually distinguishable from the situation in this case. To the extent that Gonzalez and Rice conflict with the holding of this case, we now overrule them.
In asserting that the appellant was attempting to “accomplish the precise inquiry into the trial judge’s mind which is prohibited by Mil. R. Evid. 606,”[33] the Court in Rice cited Washington v. Strickland,[34] and Proffitt v. Wainwright,[35] In Washington, a U.S. district court denied habeas relief due, in part, to the testimony from the state trial judge who imposed the death penalty.[36] The Fifth Circuit held that, although the lower court could properly consider the testimony of the trial judge to the extent it contains personal knowledge of historical facts or expert opinion, “the portion of [the judge’s] testimony in which he explained his reasons for imposing the death sentence and his probable response to the evidence adduced at the habeas hearing is inadmissible evidence that may not be considered by the [lower] court.”[37]
The Fifth Circuit based its holding on two cases. One was the Supreme Court’s 1904 decision in Fayerweather v. Ritch,[38] where the Court held:
[T]he testimony of the trial judge, given six years after the case had been disposed of, in respect to matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule [prohibiting testimony by jurors] is not wholly applicable, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts — matters which are susceptible of evidence of both sides. A judgment is a solemn record. Parties have a right to rely upon it. It *22 should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.[39]
In Fayerweather, the judge was being asked to provide testimony about his thought process years after the trial. But in the present case, the military judge volunteered his explicit statement that he based his sentence in part on collateral consequences immediately following the trial. Therefore, this is not a situation where Appellant is trying to “disturb” his trial’s outcome or have it “overthrown or limited” by asking the military judge to disclose his thoughts when he determined Appellant’s sentence that would otherwise never have been disclosed.[40]
The other case that the Fifth Circuit cited to support its holding in Washington is United States v. Crouch.[41] In that case, the Fifth Circuit stated that just as a court will not review the motives of a legislature in enacting a law, a “judge’s statement of his mental processes is absolutely unreviewable.”[42] Crouch cites the excerpt from Fayerweather quoted above and United States v. Morgan,[43] where the Supreme Court stated it could not review the mental processes of the Secretary of Agriculture in proceedings held to determine the reasonableness of rates charged by market agencies at stockyards. The facts of Morgan — where the Supreme Court declined to delve into the mental processes of the Secretary of Agriculture in an attempt to determine if the rates he set were reasonable — are clearly factually distinguishable from the situation in this case.
Fayerweather and Crouch are the same two cases that the Eleventh Circuit cited in Proffitt.[44] In reversing the district court’s denial of appellant’s habeas claim in part, the Eleventh Circuit held that the lower court erred in relying on the trial judge’s post-trial statements that he did not use an expert’s report in determining the sentence.[45] The court stated that “post-decision statements by a judge or juror about his mental processes in reaching [a] decision may not be used as evidence in a subsequent challenge to the decision.”[46] The situation in Proffitt is similar to the other cases that are concerned with protecting judges’ mental processes from being called into question long after the end of the trial. Their rationale does not apply where, as in this case, immediately after trial the military judge voluntarily disclosed the information he considered in making a sentence determination.
Significantly, the Supreme Court has not explicitly held that Fed.R.Evid. 606(b)[47] applies to trial judges, and the rule is cited by only one of the cases discussed above. In Washington, the Fifth Circuit cited Fed. R.Evid. 606(b) and stated that its underlying policy considerations apply equally to judges.[48] The Fifth Circuit then provided an in-depth discussion of the policy reasons why a judge’s deliberative process should not be revealed.[49] Most, if not all, of the policy reasons are inapplicable to the situation in this case, thus providing further support for our holding that the military judge’s voluntary disclosure in this case should not be protected by M.R.E. 606(b).
First, the Fifth Circuit stated that the testimony of the trial judge “poses special *23 risks of inaccuracy” because it is “often given several years after the fact and a judge is unlikely to be able to reconstruct his thought processes accurately over such a span of time.”[50] Second, “the finality and integrity of judgments would be threatened by a rule that enables parties to attack a judgment by probing the mental processes of a judge.”[51] Also, a “probing of the mental processes of a state judge would exacerbate certain problems that are already inherent in the habeas corpus context,” such as the “tendency of the habeas proceeding to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event” when a trial judge is “called into federal court several years later to recreate his thought processes at the criminal trial.”[52] Finally, the “friction between the state and federal systems of justice can hardly be alleviated by a rule that permits the parties to interrogate a state judge in federal court regarding the basis for his decision.”[53]
The first and fourth reasons are clearly inapplicable to the military judge’s disclosure in this case. The first reason does not apply because the military judge explicitly stated his thought process in the “Bridging the Gap” session immediately after trial; this is not a case where the judge is being asked years afterwards to recall his thought processes. The fourth policy reason is inapplicable because the military justice system is one system, rendering the friction between the federal and state systems irrelevant.
The second and third factors — which we will label the “finality” factors — arguably support the conclusion that a judge’s mental processes should be protected. But the situation in this case, where the military judge voluntarily disclosed immediately after trial that he considered collateral information in determining Appellant’s sentence, is completely different from an appellant’s request years after a trial to explore the deliberative process of the judge.[54] Additionally, in this ease, neither the military judge nor the Government disputes the existence of the statement concerning the military judge’s basis for assessing Appellant’s sentence. Thus, this case is also distinguishable from cases where the military judge disputes he ever made the statements the appellant later claims demonstrate prejudice.[55]
In conclusion, the plain meaning of M.R.E. 606 limits its application to court members. When read in conjunction with M.R.E. 605, it becomes even more apparent that military judges are excluded from its scope. Moreover, to read the case law as protecting all statements made by a military judge — such as the one made here — would not only further misconstrue the precedent relied upon in our decisions in Rice and Gonzalez, but would also thwart the well-settled rules against considering collateral information in assessing an accused’s sentence. Therefore, we hold that the military judge erred in considering the Army’s policy of “good-time” credit when assessing Appellant’s sentence. Furthermore, we hold that the Army Court of Criminal Appeals erred in relying on M.R.E. 606(b) to protect the statements voluntarily disclosed by the military judge. To the extent that our decisions in Rice and Gonzalez conflict with this decision, they are overruled.
When the military judge’s statements are considered, it is apparent that he lengthened Appellant’s sentence by ten days for an improper reason. This error establishes prejudice under Article 59(a), UCMJ, 10 U.S.C. § 859(a).[56] The Army Court of Criminal Appeals is best positioned to determine *24 the appropriate remedy for Appellant being improperly confined for ten days.

DECISION

Accordingly, we affirm that portion of the lower court’s decision affirming the findings. We set aside the portion of the lower court’s decision affirming the sentence and remand the case to the Army Court of Criminal Appeals. That court shall perform a new Article 66(c), UCMJ, sentence appropriateness review in light of Appellant’s improper confinement for ten days and determine an appropriate remedy.

. "Bridging the Gap” sessions, common in Army practice, are post-trial meetings intended to be used as professional and skill development for trial and defense counsel. See United States v. Copening, 34 M.J. 28, 29 n. * (C.M.A.1992).

. Therefore, we granted review of the following issue:
Whether the military judge erred in considering the collateral administrative effect of the Army Regional Correctional Facilities’ policy of granting a service member five days of confinement credit per month for sentences which include less than twelve months of confinement in adjudging Appellant’s sentence.
60 M.J. 122 (C.A.A.F.2004) (order granting review).

. United States v. McNutt, 59 M.J. 629 (A.Ct. Crim.App.2003).

. Accordingly, we also granted review of this issue:
Whether the Army Court of Criminal Appeals erred in holding that there was no evidence of extraneous prejudicial information improperly brought to the attention of the sentencing authority and no basis for impeaching Appellant’s sentence under Mil. R. Evid. 606(b).
60 M.J. 122 (C.A.A.F.2004)(order granting review).

. 10 U.S.C. §§ 885, 886 (2002).

. See R.C.M. 1105, 1107 (convening authority must consider clemency matters submitted by accused before taking final action on sentence).

. The military judge’s statements made during the "Bridging the Gap" session were first asserted by Appellant in his clemency submission to the convening authority. Appellate Government counsel did not deny that the statements were made when the case was before the Army Court of Criminal Appeals, a fact specifically noted by that court. See McNutt, 59 M.J. at 631. And now before our Court, the unrebutted statements continue to be unchallenged by appellate Government counsel.

. 34 M.J. 926 (A.F.C.M.R.1992).

. M.R.E. 606(b) prohibits a court member from testifying as to any matter or statement made during deliberations or to the effect of anything upon the member's mind, emotions, or mental processes in deciding the findings or sentence, with three exceptions. "[A] member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members ..., whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence."

. McNutt, 59 M.J. at 632.

. Id.

. Id. at 633.

. United. States v. Griffin, 25 M.J. 423, 424 (C.M.A. 1988) (quoting United States v. Quesinberry, 12 C.M.A. 609, 612, 31 C.M.R. 195, 198 (1962)).

. Id. (stating that the impact of a punitive discharge on retirement benefits is a collateral consequence that should not influence the members' decision on the accused’s sentence). See also United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959) (stating that the sentences in other cases cannot be given to court-martial members for comparative purposes).

. Quesinberry, 12 C.M.A. at 612, 31 C.M.R. at 198 (holding that members should not be informed of the specific consequences of a bad-conduct discharge).

. Id.

. United States v. Duncan, 53 M.J. 494, 499 (C.A.A.F.2000).

. See, e.g., United States v. Boyd, 55 M.J. 217, 221 (C.A.A.F.2001) (stating that military judges should "instruct on the impact of a punitive discharge on retirement benefits, if there is an evidentiary predicate for the instruction and a party requests it.... They may deny a request for such an instruction only in cases where there is no evidentiary predicate for it or the possibility of retirement is so remote as to make it irrelevant to determining an appropriate sentence.”). Additionally, instructions are routinely given on the other consequences of a punitive discharge. See, e.g., United States v. Rasnick, 58 M.J. 9, 10 (C.A.A.F.2003) (affirming the military judge’s refusal to instruct the members that a punitive discharge was an “ineradicable stigma,” where he "adequately advised the members that a punitive discharge was a severe punishment, that it would entail specified adverse consequences, and that it would affect Appellant's future with regard to his legal rights, economic opportunities, and social acceptability” (internal quotations omitted)).

. Duncan, 53 M.J. at 499 (internal quotations and citation omitted).

. Id. at 500 (citing United States v. Greaves, 46 M.J. 133, 139 (C.A.A.F.1997)).

. Id.

. See United States v. Howell, 16 M.J. 1003 (A.C.M.R.1983) (Naughton, J., concurring) (finding it improper for the trial counsel to argue that the appellant would not serve the full confine *20 ment time adjudged by the members because of "good-time” credit).

. Mamaluy, 10 C.M.A. at 107, 27 C.M.R. at 181.

. McNutt, 59 M.J. at 633.

. 42 M.J. 244, 250-51 (C.A.A.F.1995)(holding that members’ statements made during deliberations about the possibility that the accused might be paroled did not fall into one of the exceptions to the M.R.E. 606(b) prohibition and thus, they were not competent to impeach the accused’s sentence).

. Our holding in this case in no way implies that the mental deliberations of military judges are not protected or that the decision-making processes of military judges are more open to scrutiny than the decision-making processes of members. We hold only that M.R.E. 606(b) is not the vehicle to protect those mental processes of military judges.

. See United States v. Ron Pair Enter., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.... [I]t is also where the inquiry should end, for where ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' ” (citations omitted)).

. See Straight, 42 M.J. at 250-51.

. Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Principles of statutory construction are used in construing the Manual for Courts-Martial, United States. United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951).

. Stewart v. Southeast Foods, Inc., 688 So.2d 733, 735-36 (Miss.1996) (holding that a reading of Miss. R. Evid. 606(b), which is substantially similar to Fed.R.Evid. 606(b), indicates that the rule applies to jurors only and that Miss. R. Evid. 605 applies to judges).

. Id. at 735.

. See United States v. Rice, 25 M.J. 35, 37-38 (C.M.A.1987) (holding that the military judge did not impermissibly rely on extraneous prejudicial information in sentencing the accused to life imprisonment); United States v. Gonzalez, 42 M.J. 373, 374-75 (C.A.A.F.1995) (per curiam) (following Rice to conclude that the military judge’s statement concerning his deliberative processes at the accused’s original sentencing could not be considered during a post-trial inquiry into the basis for the sentence he imposed).

. Rice, 25 M.J. at 38.

. 693 F.2d 1243, 1263 (5th Cir.1982) (en banc), rev’d on other grounds, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. 685 F.2d 1227, 1255 (11th Cir.1982).

. 693 F.2d 1243.

. Id. at 1263.

. 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904).

. Id. at 306-07, 25 S.Ct. 58 (emphasis added).

. Id.

. 566 F.2d 1311 (5th Cir. 1978).

. Id. at 1316.

. 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

. 685 F.2d at 1255.

. Id.

. Id.

. Fed.R.Evid. 606(b) is virtually identical to M.R.E. 606(b), except that it does not include the exception for "unlawful command influence" that is included in M.R.E. 606(b).

. 693 F.2d at 1263.

. Id. Some of these policy reasons were addressed by the Air Force Court of Military Review in United States v. Rice, 20 M.J. 764, 768 (A.F.C.M.R.1985), aff'd, 25 M.J. 35, 37-38 (1987), when it held that M.R.E. 606(b) applies to military judges.

. Washington, 693 F.2d at 1263.

. Id.

. Id. (internal quotations and citations omitted).

. Id.

. See Fayerweather, 195 U.S. at 306-07, 25 S.Ct. 58. See also Morrison v. Kimmelman, 650 F.Supp. 801, 805-07 (D.N.J.1986) (holding that, on remand, the State could not elicit evidence from the trial judge, sitting as trier of fact, concerning how he weighed the evidence and whether, absent a specific type of evidence, he would have convicted the petitioner).

. See United States v. Lentz, 54 M.J. 818, 820 (N.M.Ct.Crim.App.2001).

. 10 U.S.C. § 850(a)(2000).