# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class TYLER L. SANKS**
**United States Army, Appellant**

ARMY 20130085

Headquarters, 82d Airborne Division
Tara A. Osborn, Military Judge (arraignment & motions)
Kirsten V. Brunson, Military Judge (trial)
Lieutenant Colonel John N. Ohlweiler, Staff Judge Advocate (pretrial)
Lieutenant Colonel Dean L. Whitford, Staff Judge Advocate (post-trial)

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Captain Patrick J. Scudieri, JA (on brief); Major Christopher D. Coleman, JA; Captain Cody Cheek, JA (on reply brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Captain Linda Chavez, JA (on brief).

23 March 2016

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

A panel of enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted premeditated murder, one specification of violating a lawful order, one specification of wrongful appropriation of a motor vehicle, one specification of maiming, one specification of aggravated assault, one specification of assault consummated by a battery, one specification of burglary, and one specification of adultery in violation of Articles 80, 92, 121, 124, 128, 129, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 921, 924, 928, 929, and 934 (2012) [hereinafter UCMJ].  The panel sentenced appellant to confinement for seventeen years and a dishonorable discharge.  The convening authority approved only so much of the sentence

extending to confinement for sixteen years and six months, and a dishonorable discharge. Appellant was credited with 255 days of confinement credit against his sentence.

Appellant's case is before this court for review under Article 66, UCMJ. Appellate counsel raised five errors, three of which merit discussion, and two of which merit relief. Appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) which are without merit.

## BACKGROUND

Appellant and Specialist (SPC) AD were friends at Fort Bragg, North Carolina. Specialist AD allowed appellant to stay at his house located at the Linden Oaks housing area just outside Fort Bragg. Later, when SPC AD's wife (Mrs. ND) and three children arrived at Fort Bragg from Chicago, appellant continued to live with them. Specialist AD deployed in May 2011 and appellant and Mrs. ND began a sexual relationship, resulting in Mrs. ND becoming pregnant with appellant's child. Specialist AD redeployed in March 2012. Upon redeployment, SPC AD did not move back into the marital home with Mrs. ND, but moved into a home down the street from where appellant, Mrs. ND, and the children were living. Appellant moved into the barracks on Fort Bragg in April 2012, and received an order from his company commander to have no contact with Mrs. ND on 17 April 2012. Specialist AD moved back in with Mrs. ND and the children in May 2012.

On 23 May 2012, after calling Mrs. ND's house and realizing that SPC AD was there, appellant took a car owned by SPC DA from Fort Bragg, exceeding the permission given to him by SPC DA, and drove to the home of Mrs. ND. After parking across the street from the home, appellant went behind the house to avoid detection by a military police patrol vehicle. Appellant then went to the front door. When SPC AD answered the door, appellant, brandishing a knife, proceeded to attack SPC AD, backing SPC AD into the house, stabbing and cutting him with the knife multiple times. Specialist AD received a laceration near the temple, a puncture wound to the throat, and multiple deep wounds to his back. Specialist AD eventually "played opossum" on the kitchen floor, acting like he was dead. Appellant then proceeded upstairs and found Mrs. ND, told her, "[SPC AD] is dead, I killed him," cut her thumb deeply with the knife, and physically assaulted her.

After appellant went upstairs, SPC AD ran outside and alerted a neighbor to help him. Specialist AD then returned to the house, procured a baseball bat from the garage, and proceeded upstairs and confronted appellant in a guest bedroom with Mrs. ND. Appellant saw SPC AD, looked surprised, and said, "[You are] supposed to be dead." Specialist AD hit appellant with the bat, and Mrs. ND was able to get behind SPC AD and eventually run downstairs. Specialist AD, along with his

2

neighbor, held appellant at bay until the military police arrived. The military police eventually talked appellant into surrendering without further incident.

## LAW AND DISCUSSION

*Sentencing Instructions*

Appellant alleges the military judge erred in instructing the panel of the effects of parole and who has the authority to grant parole and early release from confinement.

When the panel returned from deliberating on appellant's sentence, the sentence worksheet appeared to indicate the panel returned a sentence of fifteen years confinement with eligibility for parole at eleven years. The following colloquy occurred between the military judge and the members of the panel:

> MJ: [Examining the sentence worksheet.] Okay. Could you return this to the president? The additional language that was written in is not something that you can give. Do you understand what I'm referring to?
>
> PRES: [Affirmative response.]
>
> MJ: Does that effect your decision?
>
> PRES: One moment, Your Honor [conferring with the members]. Yes.
>
> MJ: That's not something that's in control of the court.
>
> PRES: Your Honor, we would like to reconsider.
>
> MEMBER [MSG PHELPS]: So, Your Honor, we can't consider that at all then?
>
> MJ: As to at what point, no; it's not something that's part of the sentence. It's not something that's in the control of the court at all. That's in control of another authority.
>
> MEMBER [MSG PHELPS]: So you can say "with" or "without"?
>
> MJ: You can either say "without." If you don't say "without" -- your possibilities for confinement are

confinement for life without eligibility for parole, confinement for life which assumes eligibility for parole, or confinement for a term, meaning a certain number of days, months, or years.  So the only sentence to confinement that does not include a possibility of parole is confinement for life without eligibility for parole.  When parole occurs, it is up to the prison authority.

MEMBER [MSG PHELPS]:  So if we say a set year, if it's less than life without parole, if we say a set year, then that means they will be eligible for parole at some point, Your Honor.

MJ:  No.  If you sentence him to confinement, for example, 10 years, then at some point in the prison system, he may become eligible for parole.  The terms of that, when the eligibility arises is not part of the judicial system, it is part of the prison system.  That's an administrative matter that goes according to their rules.  Is that clear for everyone?  Any other questions on that issue?

MEMBER [CSM LACLAIR]:  Your Honor, do we know what that would be?

MJ:  We do not.  Part of it may depend upon where he is confined.  I don't have information regarding that because it's just not something that we do; it's not in our purview.  We can either - - the sentencing authority in this case can either sentence him to no eligibility for parole or it is assumed that if the system allows for parole, he would be eligible.  Again, when he would be eligible, what the terms of that, whether it would actually come to fruition is completely out of our control.

MEMBER [CSM LACLAIR]:  Your Honor, when we asked if there is no eligibility for parole, is there a minimum number of years for no eligibility?  Does it have to be life?

MJ:  It's life, yes.  Anything less than life, then he is eligible for parole; even with life, he can be eligible for parole.  Any other questions?

The military judge then gave the panel instructions on the process reconsideration of the sentence. The military judge then asked if there were any other questions. The following colloquy occurred:

> MEMBER [CSM LACLAIR]: Your Honor, is there like - - I understand that it depends on the system they're in, but is there like a norm of how many years someone would serve before they are considered for parole?
>
> MJ: I have no idea. I have no idea what the rules are regarding that, and even if I did, I don't think I'd be allowed to tell you because it's not something you're supposed to consider.
>
> MEMBER [CSM LECLAIR]: Roger, Your Honor.

The panel then continued its deliberations and returned with a sentence of seventeen years confinement and a dishonorable discharge.

Appellant asserts the military judge incorrectly instructed the panel with regard to parole, by failing to explain when a prisoner becomes eligible for parole, by stating that parole eligibility would depend upon "…where he is confined," and by providing instructions that were generally muddled, confusing, and internally inconsistent. Appellant asserts the military judge did not clearly state the panel "could not consider [the possibility of parole] in arriving at an appropriate sentence." *United States v. McNutt*, 62 M.J. 16, 19 (C.A.A.F 2005).

The government asserts the military judge correctly stated appellant's parole eligibility may depend upon where he is confined, particularly if he is confined in a facility under the control of the U.S. Parole Commission, as their policies and procedures would apply. *See* Army Reg. 15-130, Army Clemency and Parole Board, para. 3-1e.(9) (23 Nov. 1998). The government further asserts the military judge did not commit error in providing an overview of the parole system and emphasizing the panel did not have the authority to determine when someone is eligible for parole. Finally, the government asserts that even assuming error, any error was harmless because the military judge properly instructed the panel that parole is a collateral matter that should not be considered in determining appellant's sentence. *See United States v. Duncan*, 53 MJ 494, 499-500 (C.A.A.F. 2000).

"Whether a panel was properly instructed is a question of law reviewed *de novo*." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citations omitted). In the absence of defense objection, we apply waiver unless the military judge's instruction constituted plain error. Rule for Courts-Martial [hereinafter R.C.M.] 920(f). "To establish plain error, appellant must demonstrate: that there was

5

'error'; that such error was 'plain, clear, or obvious'; and that the error 'affect[ed]' appellant's 'substantial rights.'" *United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995) (quoting *United States v. Olano*, 507 U.S. 725, 732-34 (1993)).

In this case, defense counsel did not object to the instructions of the military judge on appellant's eligibility for parole. Considering the totality of the instructions provided by the military judge on the issue of parole eligibility to an active and inquisitive panel, we do not find plain error here. The military judge provided adequate instructions in response to several questions of panel members on parole eligibility. Importantly, the military judge provided the panel with an instruction that parole eligibility is "…not something that's part of the sentence. It's not something that's in the control of the court at all. That's in control of another authority." Later the military judge stated, in her last words on the matter, the possibility of parole is "not something you're supposed to consider."

In *McNutt*, our superior court stated, "[f]or example the 'availability of parole and rehabilitation programs are issues of general knowledge and concern, and as such they may be instructed upon, especially when requested by the members.'" *McNutt*, 62 M.J. at 19 (quoting *Duncan,* 53 M.J. at 500). "However, in such a situation, the military judge should then instruct the members that although the possibility of parole exists in the military justice system, 'they could not consider it in arriving at an appropriate sentence for [the] appellant.'" *Id*. The military judge followed the dictates of *McNutt* and *Duncan* in her instructions to the panel and clearly communicated to the panel that parole eligibility was "something you're not supposed to consider." Although the military judge did not use the exact wording that the panel "should not consider [parole eligibility]," she did correctly apply the holding of *Duncan*. The panel was left with the clear understanding that the possibility of parole existed, but that they should not consider it in arriving at an appropriate sentence. We do not view the exact language of *Duncan* as talismanic in nature. The instructions of the military judge on the issue of parole eligibility did not constitute plain error.

### *Aggravated Assault as a Lesser Included Offense of Maiming*

Appellant asserts the military judge erred when she instructed the panel that aggravated assault by intentional infliction of grievous bodily harm was a lesser included offense of maiming. Based upon this court's holding in *United States v. Hanks*, 74 M.J. 556, 559 (Army Ct. Crim App. 2014), we agree. In *Hanks*, this court held aggravated assault where grievous bodily harm is intentionally inflicted is not a lesser included offense of maiming. *Id*.

Here, the panel returned a finding of not guilty to Specification 1 of Charge IV (maiming of Mrs. ND), but guilty of aggravated assault, in violation of Article 128. Even though appellant was on notice of a theory of aggravated assault against

Mrs. ND as evidenced by Specification 2 of Charge V on the charge sheet, the government moved to dismiss this specification in satisfaction of a defense motion for unreasonable multiplication of charges with the maiming specification against Mrs. ND, premised upon defense counsel agreeing that the aggravated assault charge was a lesser included offense of maiming. Accordingly, the military judge dismissed Specification 2 of Charge V prior to pleas. *Hanks* was decided after the conclusion of this case. Consistent with our holding in *Hanks*, Specification 1 of Charge IV is dismissed.[1]

*Unreasonable Multiplication of Charges*

Appellant asserts the attempted murder of SPC AD and the maiming of SPC AD constitute an unreasonable multiplication of charges. Appellant asks this court to dismiss the maiming specification in Specification 2 of Charge IV. We agree.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We consider five factors to determine whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase [the] appellant's punitive exposure?;
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001) (internal citation and quotation marks omitted) (internal alteration reflects the holding by the United States Court of Appeals for the Armed Forces (CAAF) in *Quiroz* that "unreasonably" was the appropriate legal standard). Here, the *Quiroz* factors on balance weigh in favor of appellant. First, defense counsel did not object at trial to the attempted murder and maiming specifications against SPC AD as constituting an unreasonable

---

[1] This holding renders appellant's claim that the military judge erred when she instructed the panel about the difference between the elements of maiming and aggravated assault moot.

multiplication of charges. This factor weighs in favor of the government. Regarding the second *Quiroz* factor, it is clear that appellant attempted to murder SPC AD. It is also apparent, and the government concedes, that the maiming specification was likely charged as an alternative theory of liability to account for exigencies of proof. In addition, the language in both the murder and maiming specifications is identical, stating "…by stabbing him [SPC AD] multiple times with a knife in or about the area of the head, neck, and back." When a fact finder "return[s] guilty findings for [multiple] specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent either to consolidate or dismiss a specification." *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467-68 (C.A.A.F. 2013) (internal citations and quotation marks omitted).

The attempted murder specification and the maiming specification are aimed at the same criminal act. The remaining factors do not weigh heavily for either the appellant or the government. It is not clear that the number of charges misrepresent or exaggerate appellant's criminality, particularly considering that maiming requires a different specific intent than attempted murder. Appellant's punitive exposure is not unreasonably increased as the maximum punishment in this case remains unaffected. Finally, there is no evidence of prosecution overreaching or abuse in the drafting of the charges, as exigencies of proof is the rationale for charging appellant with the attempted murder and maiming of SPC AD. On balance, we find that the *Quiroz* factors tip slightly in favor of appellant. Therefore, the maiming specification of Specification 2 of Charge IV is dismissed.

*Sentence Reassessment*

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors:

> (1) Dramatic changes in the penalty landscape and exposure.
>
> (2) Whether an appellant chose sentencing by members or a military judge alone. As a matter of logic, judges of the courts of criminal appeals are more likely to be certain of what a military judge would have done as opposed to members. This factor could become more relevant where charges address service custom, service discrediting conduct or conduct unbecoming.

> (3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses. (4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

*United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) (internal citations omitted).

Applying these factors to this case, we are confident that reassessment is appropriate. First we look to the penalty landscape. The maximum punishment in this case remains confinement for life without eligibility for parole. Second, although appellant was sentenced by a panel of enlisted members, we have experience dealing with cases like this involving violent crime. We are confident we can discern what punishment a panel would adjudge in this case. Third, the gravamen of the criminal conduct included within the original offenses remains substantially the same. Appellant remains convicted of one specification of attempted murder, one specification of violating a lawful order, one specification of wrongful appropriation of a motor vehicle, one specification of assault consummated by a battery, one specification of burglary, and one specification of adultery. Thus, neither the penalty landscape nor the vast majority of admissible aggravation evidence has significantly changed. Lastly, we have familiarity and experience with the remaining offenses to reliably determine what sentence would have been imposed at trial.

## CONCLUSION

The findings of guilty for Charge IV and its specifications are set aside and dismissed. The remaining findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *Winckelmann*, we affirm the approved sentence. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his findings set aside by this decision, are ordered restored.

CAMPANELLA, Judge, concurring in part, dissenting in part:

I concur with the majority opinion that the military judge did not commit plain error in her panel instructions regarding parole. I also concur with the majority that aggravated assault is not a lesser-included offense of maiming. I

9

respectfully dissent, however, from the ruling of the majority that the attempted murder of SPC AD and the maiming of SPC AD constitute an unreasonable multiplication of charges. In my opinion, these two charges, while related, firmly stand separately and I am not compelled to dismiss the maiming charge as the majority would have it.

Looking to the *Quiroz* factors, at trial appellant did not specifically request relief based on the principle of unreasonable multiplication of charges.[2] "While not applying a blanket forfeiture rule, the failure to raise the issue at trial suggests that the appellant did not view the multiplication of charges as unreasonable. This approach is consistent with that taken on other issues where there was no objection at trial." *United States v. Quiroz*, 53 M.J. 600, 603 (C.A.A.F. 2000)*; see also*, e.g., *United States v. Acosta*, 49 M.J. 14, 18 (1998) (lack of defense objection shows defense belief in neutrality of the military judge); *United States v. Huffman*, 40 M.J. 225, 227 (C.M.A. 1994) (failure to object to conditions of pretrial confinement is strong evidence of a lack of an Article 13, UCMJ, violation). The lack of objection at trial significantly weakens appellant's argument on appeal.

Second, each charge is aimed at distinctly separate criminal acts and interests to be protected in society. Maiming requires an act of physical injury that degrades the appearance or function of a person in a substantially permanent nature and the precise injury inflicted need not be intended specifically by the perpetrator. A charge of attempted murder does not require such an injury occur. One could commit the offense of maiming without also committing the act of attempted murder if the perpetrator maimed a victim intending to cause some injury as required by the elements of maiming, but did not intend to murder the victim. Likewise, one can commit an attempted murder and not maim their victim. These offenses stand alone as each provision requires proof of a fact or element that the other does not.

While the government concedes that the maiming and the attempted murder charge were *likely* charged as alternative theories due to "exigencies of proof," this concession is neither dispositive nor accurate. The majority cites *United States v. Elespuru*, 73 M.J. 326 (C.A.A.F. 2014) for the proposition that it is incumbent upon this court to either consolidate or dismiss when a fact finder "returns guilty findings for specifications and it was agreed that these specifications were charged for exigencies of proof." First, in cases of sexual assault where society's interest is to prevent *sexual assaults* of all kinds, this proposition makes sense. This is not a sexual assault case and the application of this principle herein would not achieve the

---

[2] Ordinarily, if an issue is forfeited, we review for plain error. "The plain error standard is met when: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (citation and internal quotation marks omitted).

same purpose.  Society proscribes the two acts in this case as criminal for different reasons – they are distinct acts that threaten different societal interests.  Further, and more persuasively, this is *not* a case of exigencies of proof.  The two charges in this case are not mutually exclusive.

Third, the number of charges and specifications does not misrepresent or exaggerate appellant's criminality.  While the two distinct and separate charges are based on the same course of conduct, together the two charges accurately reflect appellant's criminality in a way that one charge standing alone does not.  Fourth, the number of charges and specifications do not unfairly increase the appellant's punitive exposure.  Appellant remains exposed to no greater maximum punishment in this case with or without maiming on the charge sheet.  Lastly, there is no evidence of prosecutorial overreaching or abuse in the drafting of the charges.

Having considered the *Quiroz* factors as applied to appellant's case, I would not find an unreasonable multiplication of charges for findings.  Finally, even if I were so inclined to make such a finding, I would merge the two charges – not dismiss one.  Dismissing the charge of maiming eliminates altogether a separate and distinct component of appellant's conduct from the charge sheet – an aspect that is not insignificant.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court