# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Senior Airman GILBERTO E. GRENALD JR.
### United States Air Force

## ACM S32283

## 14 July 2016

Sentence adjudged 20 November 2014 by SPCM convened at Buckley Air Force Base, Colorado. Military Judge: Brendon K. Tukey.

Approved Sentence: Bad-conduct discharge, confinement for 5 days, reprimand.

Appellate Counsel for Appellant: Captain Annie W. Morgan.

Appellate Counsel for the United States: Major Mary Ellen Payne; Major Jeremy D. Gehman; and Mr. Gerald R. Bruce, Esq.

Before

HECKER, DUBRISKE, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge, delivered the opinion of the court, in which, MAYBERRY, Judge, joined. DUBRISKE, Judge, filed a separate dissenting opinion.

At a special court-martial composed of officer members, Appellant was convicted, in accordance with his pleas, of wrongfully using marijuana on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Appellant was sentenced to a bad-conduct discharge, confinement for 5 days, and a reprimand.

Appellant raises four issues on appeal: (1) whether his court martial had jurisdiction to try him; (2) whether his record of trial is substantially complete; (3) whether the military

judge properly instructed the panel regarding a bad-conduct discharge's impact on his veteran's benefits and the members' ability to consider his nonjudicial punishment during sentencing; and (4) whether the adjudged sentence is inappropriately severe.

*Background*

Appellant enlisted in the Air Force in August 1997 and received above average or outstanding performance reports until 2011, when he received a referral performance report for failing a fitness test (that report indicated he exceeded standards in all other categories). Between November 2006 and May 2007, he deployed to Afghanistan and Iraq and earned the Air Force Combat Action Medal for his role in personally engaging enemy forces while providing security at the site of a downed aircraft carrying U.S. security contractors.[1] He also was responsible for recovering the remains of the deceased contractors.

In January and February 2014, Appellant had two positive urinalysis tests indicating he had used marijuana. He accepted nonjudicial punishment for that misconduct in June 2014 and received a punishment that included a reduction in rank to E-4. In September and October 2014, Appellant had five additional positive urinalyses, which served as the basis for the charge at his court-martial. The first urinalysis in September occurred after Appellant was randomly selected for testing, and the other four tests were follow-on inspections conducted pursuant to *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990).

*Jurisdiction*

During Appellant's arraignment, the trial counsel announced that the court-martial had been convened by Special Order AB-2 (dated 22 September 2014), amended by Special Order AB-2 (dated 29 October 2014) and Special Order AB-3 (dated 6 November 2014). The 22 September and 6 November 2014 orders were included within the record of trial. The other special order in the record of trial, however, did not match the description announced during the trial. Instead of being numbered Special Order AB-2, the 29 October 2014 order in the record of trial is numbered Special Order AB-4.

Based on this discrepancy, Appellant contends his court-martial was without jurisdiction to try him. He argues that the only proper special order in the trial was the one dated 22 September 2014 and that since only two of the five panel members were found on that order, his panel was improperly constituted and one member short of the three required for a special court-martial.

In response, the Government submitted a declaration from the military justice paralegal assigned to the base that prosecuted Appellant. She explained the legal office

---

[1] The principal eligibility criterion for this medal is that the individual must have been under direct and hostile fire while operating in unsecured space (outside the defended perimeter), or physically engaging hostile forces with direct and lethal fire. *See* http://www.afpc.af.mil/library/factsheets/factsheet.asp?id=11444

discovered prior to Appellant's trial that it had failed to properly number the special orders that were issued following the beginning of the fiscal year. The first special order published after 1 October 2014 should have been labeled AB-1. Instead of following this protocol, the legal office continued with the numbering system from the prior fiscal year, and thus initially labeled the 29 October 2014 order as AB-4. At the direction of higher headquarters, the paralegal prepared a new special order to replace it that was identical in all respects except it replaced AB-4 with the correct number for the new fiscal year—AB-2. All copies of the erroneous special panel order were supposed to be destroyed but one was inadvertently included within the record of trial. In light of this updated information regarding an administrative error in the numbering process, we find there was no jurisdictional error in Appellant's court-martial regarding the publishing of the special panel orders or the members who were part of his panel.

*Incomplete Record of Trial*

There were three court-martial convening orders in this case. The original order detailed nine members. A subsequent order relieved two of them and added four members, making a total of eleven members. The last order, dated 6 November 2014, relieved one of the original members and added two others. Appellant contends his record of trial is incomplete because it does not include the member excusal and selection paperwork associated with this third convening order.[2] Appellant contends this omission from the record of trial makes it impossible for his appellate counsel and this court to perform their duties under Article 66, UCMJ, 10 U.S.C. § 866.[3] We disagree.

A substantial omission renders the record of trial incomplete and raises a presumption of prejudice that the government must rebut. *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000). Whether a record of trial is complete and substantially verbatim is a question of law we review de novo. *Id.* at 110.

It would be preferable for the record of trial to include the document on which the convening authority indicated his personal decisions regarding the third convening order. *See* Air Force Manual 51-203, *Records of Trial*, Figure 4.1, ¶ 21.b. (17 November 2009) (stating a record of trial's allied papers should include "any other papers, indorsements, or investigations that accompanied the charges when referred to trial"); Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 4.6 (6 June 2013) (stating that upon referral, "[i]f the convening authority needs to detail members to a court-martial to try the forwarded case, [the staff judge advocate should] forward appropriate documentation for court-member selection").

---

[2] In her declaration, the military justice paralegal describes her unsuccessful attempts to find this paperwork.
[3] Appellant also contends the first indorsement to the charge sheet is missing from his record of trial. This document is contained in the original record of trial filed with this court.

However, we do not find the paperwork's absence in this case to be a substantial omission nor that it prevents us from fulfilling our responsibilities under Article 66, UCMJ. First, we note that "[b]efore the court-martial is assembled, the convening authority may change the members of the court-martial without showing cause." Rule for Courts-Martial (R.C.M.) 505(c)(1)(A). Second, included within the record of trial is a convening order reflecting the intent of the convening authority to relieve one member and detail two others. This order was signed "For the Commander" by his Staff Judge Advocate, as were the other two convening orders. We presume the staff judge advocate was properly delegated the authority to publish this third special order as the convening authority had expressly directed her to do so for the other two special orders. We also presume the convening order properly reflects the convening authority's personal decision to relieve one member and select two others for Appellant's court-martial. Third, the Defense did not raise an issue at trial regarding the member selection process, nor does Appellant articulate any specific prejudice now regarding the absence of the paperwork from the record of trial. *See* R.C.M. 701(a)(1)(A) (stating that the trial counsel "shall provide" the defense with "[a]ny paper which accompanied the charges when they were referred to the court-martial").

*Sentencing Instructions*

Appellant raises two issues regarding the sentencing instructions given to the panel in his case. First, he contends the panel was improperly instructed regarding the effect a punitive discharge would have on his Veterans Administration benefits. Second, he argues the panel was improperly instructed on what consideration it could give to his prior nonjudicial punishment for using marijuana. In light of our determination of the first issue, we do not reach the second.

Whether a panel was properly instructed is a question of law reviewed de novo. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). However, where counsel fails to object to an instruction at trial, we review the military judge's instruction for plain error. *Id.*; R.C.M. 920(f).[4] In order to constitute plain error, the error must be both plain and obvious and must also have "had an unfair prejudicial impact on the jury's deliberations." *United States v. Griffin*, 25 M.J. 423, 425 (C.M.A. 1988).

*Instruction on Benefits Administered by the Department of Veterans Affairs (VA)*

Appellant has a long history of traumatic experiences. His treating psychologist testified that Appellant's first such experiences occurred when he was repeatedly sexually abused as a child. Appellant also experienced traumatic combat experiences in 2006 and 2007 (during his prior enlistment) and he reported experiencing some post-traumatic stress disorder (PTSD) symptoms after that time. It was not until after his reenlistment, however, that he began experiencing significant problems. Prior to that time, his performance reports

---

[4] Although we recognize the rule describes failure to object as "waiver," this is in fact forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

were outstanding. In late 2012, he became depressed when he failed a physical fitness test and that depression worsened considerably when he experienced two traumatic events in 2013—he learned in January 2013 that his sister had been raped, and in March 2013, his brother was violently murdered. Appellant attempted suicide in April 2013 and began excessively using alcohol and marijuana in January 2014.

Appellant's treating psychologist testified as an expert witness on the diagnosis and treatment of PTSD, and discussed his evaluation and treatment of Appellant after he was admitted as an inpatient in October 2014. Based on Appellant's history and symptoms, the psychologist diagnosed him with PTSD (with accompanying anxiety), severe depression with suicidal ideation, and panic disorder. He explained how the onset of PTSD is generally delayed for some period of time following a traumatic event and that new stressors or trauma can combine with the emotions from the initial trauma to cause a recurrence of the PTSD symptoms, especially if untreated. He also testified that, in his professional opinion, Appellant was using alcohol and marijuana to self-medicate in an effort to control his PTSD symptoms. He also testified that Appellant had made progress during the inpatient treatment but needed to continue his counseling and taking of psychiatric medication after leaving the military.

The parties discussed the VA benefits issue with the military judge in an R.C.M. 802 session that was only generically summarized on the record. The trial counsel indicated that discussion was about the "intricate system [used] to determine what VA benefits are available." On the record, the military judge stated his understanding that the VA has "a fairly complex and elaborate process to determine what goes on with the VA benefits" and indicated his plan to instruct the panel that a punitive discharge involves the loss of "substantially all benefits" administered by the Veterans Administration.

In discussing a character letter's statement that Appellant would lose his VA benefits as part of the court-martial, the military judge indicated to counsel his view that no sentence the panel could adjudge would "necessarily terminate" those benefits. The trial counsel similarly expressed concern that the panel would be given the impression that adjudging a bad-conduct discharge would prevent Appellant from getting access to VA benefits and asked that trial defense counsel be prevented from making an argument along those lines. At the Government's request and without Defense objection, the military judge provided the panel with an additional instruction from the *Military Judges' Benchbook*[5] that stated:

> "[V]ested benefits from a prior period of honorable service are *not forfeited* by receipt of a bad conduct discharge that would terminate the accused's current term of service. The accused in this case has completed prior terms of honorable service."

---

[5] Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 2–5–22 (10 September 2014).

The assistant trial counsel then used that instruction to argue:

> I'm going to read what the military judge instructed you. "This court may adjudge a bad conduct discharge. Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force establishment." I'm going to stop there. It says "substantially" on it. It's not all. It's qualified, members.
>
> It goes on, "However, vested benefits from a prior period of honorable service are not forfeited by receipt of a bad conduct discharge that would terminate the accused's current term of service." Members, you heard from the military judge that the accused does have prior good terms of military service on his record.

The trial counsel then went on to argue that Appellant should receive a bad conduct discharge.

Through character letters and the testimony of Appellant's treating psychologist, the Defense presented evidence that Appellant needed to continue with treatment following the trial, and that the VA offered appropriate group therapy and medication. In his sentencing argument, the Defense expressly asked the panel to adjudge a sentence that allowed Appellant to continue receiving treatment for his issues.

Prior to the members beginning deliberations, the president requested clarification on how the potential punitive discharge would affect Appellant's benefits in light of the instruction about Appellant's prior terms of service. The military judge responded that "[T]he collateral results of a punishment like that are not an appropriate consideration in determining whether or not that . . . is a punishment that you believe is appropriate to impose." He then repeated the prior instruction, including the statement that vested benefits from a prior honorable enlistment are not forfeited by a punitive discharge. A second panel member then asked if there were any discharge options available other than a bad-conduct discharge, and was told there were not.

On appeal, Appellant contends the military judge should not have instructed the members about the non-forfeiture of benefits from prior enlistments as the issue of his future benefits was a collateral matter that should not be considered as part of a sentencing decision.[6] The Government disagrees, arguing that the loss of VA benefits as the result of

---

[6] "A collateral consequence is a penalty for committing a crime, in addition to the penalties included in the criminal sentence." *United States v. Miller*, 63 M.J. 452, 457 (C.A.A.F. 2006), *overruled in part by United States v. Riley*, 72 M.J. 115, 120–21 (C.A.A.F. 2013).

a punitive discharge is a direct consequence of that discharge and thus is appropriate to consider in sentencing.[7] *See United States v. Talkington*, 73 M.J. 212, 217 (C.A.A.F. 2014) (noting that the loss of benefits can be a direct consequence of the imposition of a punitive discharge and thus are not collateral); *see also United States v. McNutt*, 62 M.J. 16, 19 (C.A.A.F. 2005) (holding there is no "bright-line rule" against instructing on or considering collateral matters during sentencing). We note that the panel was told that the "collateral results" of a punitive discharge were not appropriate for them to consider in determining Appellant's punishment but was also instructed twice on those "collateral results," and trial counsel referenced this issue during argument. We agree with the Government's position that the loss of VA benefits is not collateral, and also find the military judge's contradictory and confusing instructions on this issue to be plain and obvious error.

We also have a more fundamental concern about the military judge's VA-related instructions—they are incomplete and thus inaccurate relative to Appellant and his situation.

The panel was instructed twice that Appellant had completed prior terms of honorable service and that he would not forfeit any benefits that had "vested" in those enlistments.[8] Given the language of this instruction in the context of Appellant's case, the panel clearly would have believed that a bad-conduct discharge would not prevent him from receiving future health care benefits from the VA due to his prior honorable discharges.

---

[7] To be eligible for benefits from the Department of Veterans Affairs (VA), the veteran's discharge must have been issued "under conditions other than dishonorable." 38 U.S.C. §101(2); 38 C.F.R. §3.1(d). By statute, certain discharges, none of which are applicable here, must be considered "dishonorable" by the VA: (1) punitive discharges adjudged at a general court-martial; (2) officer resignations in lieu of court-martial; and (3) discharges for deserters, conscientious objectors or individuals who are absent without leave for a continuous period of 180 days unless there are compelling circumstances for such absence. 38 U.S.C. § 5303(a), (b); 38 C.F.R. § 3.12(c). Similarly, by regulation, other discharges are also considered "dishonorable" for VA benefits purposes: (1) the servicemember accepted an undesirable discharge to avoid a general court-martial; (2) the discharge was based on an offense involving moral turpitude (generally including conviction of a felony) or on willful and persistent misconduct. 38 C.F.R. §3.12(d). Even if a servicemember's discharge falls within these statutory or regulatory bars, a servicemember can still be found eligible for benefits if such eligibility can be established based on a prior period of honorable service. *See The Effect of a Discharge Under Dishonorable Conditions on Eligibility for Gratuitous Veterans' Benefits Based on a Prior Period of Honorable Service*, Department of Veterans Affairs, Off. Gen. Counsel, Precedent Opinion 61-91, ¶¶ 4-5 (1991) (concluding that a discharge found by the Veterans Administration to have been "issued under dishonorable conditions from one period of service does not constitute a bar to VA benefits if there was another period of qualifying service upon which a claim could be predicated"); *see also* Department of Veterans' Affairs, *Adjudication Procedures Manual*, M21-1MR, III.v.1.B.5.d. The servicemember can also be found eligible for benefits if he/she was insane at the time of the offense that led to the discharge found to be dishonorable by the VA. 38 C.F.R. § 3.12(b);

[8] Veterans' benefits actually "do not 'vest'" as a veteran has no "right" to such benefits until he/she applies for them and his/her entitlement to them is adjudicated by the VA. *United States v. McElroy*, 40 M.J. 368, 372 (C.M.A. 1994). Despite our superior court's holding, the *Military Judges' Benchbook* has not been amended to remove this statement.

However, the instruction is incomplete in that it does not tell the panel that, under long-standing federal law and regulation, an adjudged bad-conduct discharge would bar Appellant from being eligible for VA health care and related benefits for any service-connected disabilities that were not incurred or aggravated during an honorably completed prior term of service. Pub. L. No. 95-126, 91 Stat. 1106, 1108 (The VA "shall not provide … health care and related benefits … for any disability incurred or aggravated during a period of service from which such person was discharged by reason of a bad conduct discharge."); 38 C.F.R. § 3.360(b) (health care and related benefits "may not be furnished for any disability incurred or aggravated during a period of service terminated by a bad conduct discharge"); *see also* Department of Veterans' Affairs, *Adjudication Procedures Manual*, M21-1MR, III.v.1.B.4.a[9] ("Even if a BCD is determined to be [under honorable conditions for VA purposes], the service member is **not** eligible for health care. This is the **only** circumstance in which a service member may be found to have [service-connected] disabilities but not be eligible for health care.").[10] Thus, if he received a bad-conduct discharge, the only way Appellant would receive health care benefits through the VA is if the VA concludes his PTSD and other medical conditions were incurred or aggravated prior to December 2009, the starting date of his current enlistment. If the VA concludes any of his disabilities or conditions were incurred or aggravated after December 2009, Appellant is ineligible for VA health care for them based on federal law and regulation. In contrast, if Appellant did not receive a bad-conduct discharge at his court-martial and instead left the military with an honorable or general (under honorable conditions) discharge, he would be entitled to VA health care benefits for all his disabilities. *See Adjudication Procedures Manual*, M21-1MR, at III.v.1.B.1.b.

Given Appellant's history, it is not clear what the VA will ultimately conclude regarding his eligibility for VA benefits for these conditions, especially the alcohol/cannabis dependence and depressive disorder that began well after December 2009. It is distinctly possible that the VA will find all or some of those conditions cannot be treated in the VA system due to the timing of when they arose or were aggravated. Thus, the military judge's belief that no sentence the panel could adjudge would "necessarily terminate" those benefits was erroneous and led him to provide an incomplete instruction. We find it was plain and obvious error for the panel to not be instructed about this important statutory and regulatory qualification and limitation on Appellant's potential future eligibility for health care through the VA, once the military judge elected to instruct the

---

[9] Available at *http://www.knowva.ebenefits.va.gov/system/templates/selfservice/va_ss/#!portal/55440000001018/topic/554400000004049/M21-1-Adjudication-Procedures-Manual*

[10] A comprehensive discussion of the impact of a punitive discharge on VA benefits, as well as proposed instructions, are found in Major John W. Brooker, et al., *Beyond "T.B.D.": Understanding VA's Evaluation of a Former Servicemember's Benefit Eligibility Following Involuntary or Punitive Discharge from the Armed Forces*, 214 Mil. L. Rev. 1 (Winter 2012).

panel that Appellant would not lose benefits from prior honorable enlistments.[11]  *See McNutt*, 62 M.J. at 19–20 (holding that even an instruction on collateral matters must be legally correct); *United States v. Duncan*, 53 M.J. 494, 498–99 (C.A.A.F. 2000) (holding error can occur where the instruction is based on an erroneous view of the law and a military judge has a responsibility to give "legally correct instructions that are tailored to the facts and circumstances of the case").

We also find that the plain and obvious errors "had an unfair prejudicial impact on the jury's deliberations." *Griffin*, 25 M.J. at 425 (quoting *United States v. Fisher*, 21 M.J. 327, 328–29 (C.M.A.1986).  As the trial counsel pointed out during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, the issue of VA benefits was the "crux" of the Defense's case.  The entire Defense sentencing case revolved around Appellant's medical conditions, how his misconduct related to those conditions and the need for him to continue in treatment following the court-martial.  Two of the panel members asked questions about the punitive discharge, including the president who directly asked how it would affect Appellant's benefits from prior terms of service.  Meanwhile, the trial counsel used the instruction to emphasize to the members that Appellant would retain benefits from his prior enlistments.  Considering the totality of the record, we find that the failure to accurately inform the panel that Appellant's entitlement to VA health care benefits was dependent on a determination of when his medical conditions were incurred or aggravated had an unfair prejudicial impact on the panel's sentencing deliberations.  The members clearly would have believed that Appellant's entitlement to future health care through the VA was part of the benefits he would not forfeit due to his prior honorable enlistments when, in fact, that scenario was far from certain.

*Sentence Reassessment*

Having found prejudicial error during the sentencing proceedings, we now must decide whether we can accurately reassess Appellant's sentence, or whether we must return this case for a sentence rehearing.  This court has "broad discretion" in deciding whether it may reassess a sentence to cure error.  *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).  A court of criminal appeals may reassess a sentence "if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006).

Applying the considerations set out in *Winckelmann*, we are unable to determine to our satisfaction that Appellant's sentence would have been at least a certain severity without the erroneous instruction.  Appellant was initially sentenced by a panel of officer and enlisted members, who considered Appellant's significant presentation of extenuation and mitigation evidence, including his service in combat and subsequent PTSD diagnosis.

---

[11] We recognize that the instruction on benefits from prior enlistments has been found not to constitute reversible error in prior cases. *See United States v. McElroy*, 40 M.J. 368, 372 (C.M.A. 1994); *United States v. Longhi*, 36 M.J. 988, 989 (A.F.C.M.R. 1993).  We find the facts of this case compels a different result.

Given the direct connection of this sentencing evidence to Appellant's misuse of controlled substances, we believe the reassessment of the sentencing evidence in this particular case is better suited for court members and, therefore, remand the case for a sentence rehearing.

*Conclusion*

The findings are correct in law and fact. Article 66(c), UCMJ. The sentence is set aside. The record of trial will be returned to The Judge Advocate General for remand to the convening authority. A rehearing on sentence is authorized.

DUBRISKE, Judge, dissenting:

I respectfully dissent as I do not find the military judge's instructions given the facts in this case amount to plain and obvious error.

It is clear from the review of the record that trial defense counsel's sentencing strategy was to focus the court members on an array of tragic events in Appellant's personal life that caused him to be formally diagnosed prior to trial with post-traumatic stress disorder (PTSD). Appellant's PTSD diagnosis was then used to explain or mitigate, at least in part, his recurring use of controlled substances. The Defense, as part of its sentencing case, submitted materials discussing Appellant's future medical needs, including treatment through the Department of Veterans Affairs (VA), and the impact of a punitive discharge on his ability to meets these needs.

As noted by the majority above, the military judge provided the pattern instruction from Department of the Army Pamphlet 27-9, Military Judges' Benchbook, ¶ 2-5-21 (10 September 2014). Because there was evidence Appellant had prior periods of honorable service, the military judge also provided an instruction that Appellant's VA benefits from a prior period of service would not be forfeited by a receipt of a bad-conduct discharge terminating his current term of service.[12] In limiting his instruction to the Benchbook language, the military judge provided the following justification:

> Here's my concern with the VA benefits issue is as you've stated quite -- Trial Counsel, I think quite rightly, they're going to get instructions from me on the subject of the VA benefits. And what happens -- the whole process for determining what VA benefits you get is Byzantine at best, and is likely to, if we get into that issue -- not only is it a collateral consequence of the punitive discharge -- if you start getting and putting in evidence -- I know we can have these absolute statements about

---

[12] Regarding his previous service, Appellant informed the panel he had been approved for early retirement, but lost this opportunity because of his recurring drug use. The personal data sheet submitted during sentencing also noted the dates of Appellant's three previous terms of service.

> VA benefits and letters, we're going to open the door to potential rebuttal about, "No, it's not a guarantee that he'll lose it," et cetera, et cetera. And I think at that point the trial has gone off the rails in terms of what's the appropriate topic.

Contrary to the conclusion of the majority, I do not find the challenged instructions clearly imported upon the court members the belief that a bad conduct discharge would not prevent Appellant from receiving full VA health care benefits due to his prior periods of honorable service. The military judge's instructions did not focus on Appellant's entitlement to medical care. To the contrary, the generic language encompassed all of Appellant's VA benefits. There was also nothing inaccurate about the instruction. *Cf. United States v. Greaves*, 46 M.J. 133, 137 (C.A.A.F. 1997) (error when instruction specifically suggested retirement benefits may still be available when punitive discharge clearly terminated a service member's military status and entitlement to retirement benefits). A bad-conduct discharge would deprive Appellant of some VA benefits, including access to medical care for service-connected disabilities or illnesses that were incurred or aggravated during his current period of service. Conversely, Appellant would still be eligible for VA benefits related to his successful completion of previous periods of service. As even acknowledged by the majority, these benefits included the possibility of medical care if Appellant's PTSD diagnosis is eventually connected to his combat service in a previous enlistment.[13]

While I agree with the majority regarding the military judge's statement that no sentence would "necessarily terminate" Appellant's VA benefits was overbroad, the fact remains the instruction provided to the court members was accurate. In fact, the same instruction has been countenanced by both our superior court and this court given similar facts. *See United States v. McElroy*, 40 M.J. 368, 372 (C.M.A. 1994); *United States v. Longhi*, 36 M.J. 988, 989 (A.F.C.M.R. 1993). As such, I cannot conclude a plain and obvious error was made in this case.



FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[13] Appellant noted when presenting his unsworn statement that he was diagnosed with PTSD from issues arising from his deployment to Iraq in a previous term of enlistment.